McCASLIN *v.* McCORD et al.

(*Jackson.*   April Term, 1906.)

1. **WARRANT OF ARREST.**   Issued in any county. Executed by any lawful officer in any county.

    A warrant for the arrest of any person charged with a violation of the criminal laws of this State may be issued in any county where the accused may be found; and may be executed by any lawful officer of the State into whose hands such warrant may come, in any county of the State.

    Case cited and approved:   Johnston v. State, 2 Yerg. 58.

    Code cited and construed:   Secs. 6988, 6989 (S.); secs. 5854, 5855 (M. & V.); sec. 5029 (1858).

2. **ARREST.**   Of escaped prisoner.   By private person, or by officer without warrant, when pursuit is immediate.

    Under the Code provisions, a private person may immediately pursue and recapture one charged with crime who had been lawfully arrested by him; and *a fortiori*, an officer may make such immediate pursuit and recapture, without a warrant, where a person charged with crime has escaped, whether from jail or from the personal custody of the officer.

    Code cited and construed:   Secs. 7002-7007 (S.); secs. 5868-5873 (M. & V.); secs. 5042-5047 (1858).

3. **SAME.**   Same.   Cannot be made by private person, or by officer without warrant, except on fresh pursuit.

    Neither a private person, nor an officer without a warrant, may lawfully arrest a person who has escaped from jail or from custody, when the pursuit is not immediate or fresh.

    Code cited and construed:   Same sections cited under headnote 2.

McCaslin v. McCord.

4. **SAME. Same. By private person. Not authorized by Shannon's Code, 7002-7005, except when escape is a felony.**

The provisions of Shannon's Code, sections 7002-7005, do not authorize any private person to make an arrest for an escape, except in those instances in which the escape itself is by law a felony.

Code cited and construed: Secs. 6684, 7002-7005, 7552, 7566 (S.); secs. 5574, 5868-5871, 6405, 6416 (M. & V.); secs. 4779, 5042-5045, 5533, 5544 (1858).

5. **SAME. Same. With exceptions stated, no authority to make without warrant.**

With the exceptions stated in the foregoing headnotes, and the further exception of immediate pursuit for recapture under sections 7006, 7007, Shannon's Code, there is no authority conferred by our statutes upon a private person, or an officer without a warrant, to make an arrest for an escape.

Code cited: Secs. 7006, 7007 (S.); secs. 5872, 5873 (M. & V.); secs. 5046, 5047 (1858).

Cases cited and distinguished: Eanes v. State, 6 Humph. 53; Lewis v. State, 3 Head, 128.

6. **SAME. By private person without warrant. Code provisions cover whole subject.**

The sections of the Code cited below were intended, by the legislature, to cover the whole subject of arrest, without a warrant, by a private person; and the common law on that subject is not in force in this State.

Code cited and construed: Secs. 6992-6996, 7002-7007 (S.); secs. 5858-5862, 5868-5873 (M. & V.); secs. 5032-5036, 5042-5047 (1858).

7. **SAME. Same. In original arrest for felony, may break into dwelling of the felon, but not of a stranger.**

A private person seeking to make an arrest for felony may, after notice of his intention and refusal of admittance, break open

McCaslin v. McCord.

an outer or inner door, or window, of the dwelling house of the person sought to be arrested, but not of a stranger.

Code cited and construed: Sec. 7004 (S.); sec. 5870 (M. & V.); sec. 5044 (1858).

8. **SAME.** Same. Where felon escapes from his custody, he may, if pursuit is fresh, break into any dwelling where felon is.

But having arrested a person for a felony, a private person may, upon an attempted escape from his custody and upon immediate and fresh pursuit, after notice of his intention and refusal of admittance, break open the outer or inner door, or window, of any dwelling house in which the fleeing criminal has sought refuge. (*Post pp.* 706-708.)

Code cited and construed: Sec. 7007 (S.); sec. 5873 (M. & V.); sec. 5047 (1858).

Cases cited: Brooks v. Com., 61 Pa. St., 352; Com. v. McGahey, 11 Gray (Mass.), 194; Com. v. Reynolds, 120 Mass., 190; Com. v. Irwin, 1 Allen, 587; State v. Hunter (N. C.), L. R. A., 533, note; State v. Brown, 5 Har. (Del.), 505; Barnard v. Bartlett, 10 Cush. (Mass.), 501; Davis v. Russell, 5 Bing., 354; Ryan v. Donnelly, 71 Ill., 100.

9. **SAME.** Same. To justify arrest, must show that felony has been committed, and reasonable cause to believe person arrested committed it.

A private person making an arrest for an offense not committed in his presence must, in order to justify his act, show that a felony had been committed, and that he had reasonable cause to believe that the person arrested committed it.

Code cited and construed: Sec. 7002 (S.); sec. 5868 (M. & V.); sec. 5042 (1858).

McCaslin v. McCord.

10.  **SAME.  By officer.  May justify by showing charge of felony, and reasonable cause to believe felony committed and person arrested committed it.**

An officer may justify an arrest made by him for a felony not committed in his presence by showing that a charge had been made of the commission of a felony, and that he had reasonable cause to believe that such felony had been committed and that the person arrested had committed it.

Code cited and construed:  Sec. 6997, subsec. 4 (S.); sec. 5863, subsec. 4 (M. & V.); sec. 5037, subsec. 4 (1858).

11.  **SAME.  With exceptions named, not intended that private citizens should pursue criminals into other counties.**

It is not within the contemplation of our statutes that private citizens of one county should take it upon themselves to go into other counties, without a warrant, in search of criminals, except in cases of fresh pursuit of a fleeing felon endeavoring to avoid immediate capture, in an original arrest or on immediate pursuit after arrest and escape.

12.  **SAME.  Private citizen has no right to break open doors in making arrest, when.  Case in judgment.**

A criminal confined in the jail of H county, pending his appeal from a conviction of a felony in that county escaped from jail and went to B county.  The sheriff of H county notified the sheriff of B county of the escape, and asked him to arrest the criminal.  The sheriff of B county attempted to make the arrest, but the criminal escaped into G county.  About a week later, the sheriff of B county, accompanied by others, went into G county for the purpose of arresting the criminal.  They had no warrant for his arrest.

Held, that the sheriff and his assistants acted as private citizens in attempting to arrest the criminal in G county, and as the criminal had not escaped from them, and they were not in fresh pursuit, they had no right to break open the outer or inner door of the dwelling house of a stranger, wherein they believed the criminal was seeking refuge.

McCaslin v. McCord.

FROM GIBSON.

Appeal from the Circuit Court of Gibson County.—
QUINTIN RANKIN, Special Judge.

J. D. SENTER and SPL. HILL, for McCaslin.

ED. SMITH, J. T. PEELER and M. M. CLARK, for Mc-
Cord et al.

MR. JUSTICE NEIL delivered the opinion of the Court.

The record discloses the following facts:

One John Lindsey, alias John Henry, had been con-
victed of the crime of arson in the circuit court of Hen-
derson county, and sentenced by that court to serve a
term in the State penitentiary for the offense.    From
this judgment he prayed an appeal to this court, and,
pending the appeal, was confined in the county jail.   He
made his escape from the jail and went over into Ben-
ton county.   The sheriff of Henderson county wrote to
the sheriff of Benton county notifying him of the escape,
and asking him to arrest Lindsey.   An effort was made
by the sheriff of Benton county, the defendant in error
McCord, to arrest Lindsey while in the latter county,
but Lindsey after firing at the officers, escaped by going

through the floor of the house in which he was concealed. From Benton county he went over into Gibson county. About a week after Lindsey had thus gone into Gibson county, McCord, accompanied by the defendant Harris, went to Milan in the latter county, and engaged the defendant in error M. S. Clark to go with him for the purpose of arresting Lindsey.    The three defendants in error left Milan after night intending to go to the house of one Wade Jacobs, under the belief that Lindsey would be found there.    On the way, however, they stopped at the house of one West with whom Clark was well acquainted, and inquired if he knew of the whereabouts of the person they were seeking.    Mr. West informed them that Lindsey was at the home of plaintiff in error, McCaslin, had engaged to work for him for the year and was going under the name of John Henry.    Relying upon this information the defendants in error went to McCaslin's place and waited near the house until about daylight, hoping to capture Lindsey on his way to the barn to feed the stock.    However, seeing a light in the house, Harris went to the window and looked in.    He was immediately discovered by Mrs. McCaslin, who had begun to prepare breakfast for her family, and the alarm was given.    The doors were slammed together and fastened, and the window shades were pulled down. In addition, some one in the house was heard to say: "Look out in there."    Thereupon McCord went to the front door and Harris to the back door of the hall that passed between the two front rooms of the house.    Har-

ris at the back door cried out in a voice loud enough to be heard at the front door: "We are officers from Benton county and we have come to arrest John Henry, who is an escaped criminal and we are after him." He also demanded that the door be opened, and that they be allowed to enter. The people in the house did not open the door, and did not make any response. The call was loud enough for any one in the house to hear what was said. It is not shown, however, that any one in the house actually heard what was said. Mr. McCaslin says that he was partially deaf, and he did not hear what was said. After waiting a while and seeing that the door was not opened, Harris then pushed or broke open the hall door and entered the hall. McCord ran around the house and went into the hall after Harris, and Mr. Clark also followed. After the defendants in error got into the hall they heard some one in the house say again: "Look out in there." Thinking that the man they sought was in the east room they ran to that door, but before going in they again said they were officers from Benton county, and were seeking John Henry, and demanded that the door of the room be opened. Receiving no response, they opened the inner door and entered the east room. As they did so they saw some one get off of the bed on to the floor in the space between the bed and the wall. They seized this man thinking he was John Henry, but on turning a flash light upon him they saw he was not. They asked this man: "Where is John Henry?" He replied: "He is in the other room." Defendants in error

then started towards the other room. When they reached the door of this room, the west room, they found it fastened. Defendant McCord demanded admittance, and again said to the person or persons in that room that he was the sheriff of Benton county and wanted John Henry, an escaped criminal, and demanded that the door be opened. In response to this demand some one in the room replied: "If you come in here I will kill you." Believing that Lindsey was in the room and had made the response above mentioned, Harris pushed open the door and entered the room. Just as he entered plaintiff in error McCaslin, who was standing behind the door, struck him a severe blow over the head with a pistol, and immediately began snapping the pistol in the face of Harris, endeavoring to shoot him. He and Harris clenched and rolled over on the bed, and then on to the floor, when the pistol fell from the hand of McCaslin or was struck from his hand by Harris. Mrs. McCaslin immediately picked up the pistol and placed it against Harris' head, and snapped it several times in an effort to shoot him. She also snapped it at McCord and tried to shoot him. McCord took hold of her arm to prevent her doing further injury, and thereupon Clark and McCord, acting together, separated Harris and McCaslin, but McCaslin flew at Harris again and continued to attack him until Harris knocked him down with his pistol.

None of the defendants knew Green McCaslin, but when they entered the room were under the impression that he was John Lindsey, alias John Henry. It was

too dark in the room to distinguish one person from another.

Mrs. McCaslin finally told the defendants in error that John Lindsey, alias John Henry, was not in the house, but was at the home of Henry Tettleton, who lived in a cabin on the farm. Upon receiving this information McCord apologized for the mistake, and went to the home of Tettleton, and arrested Lindsey.

The foregoing is the substance of the evidence given by the defendants in error. The evidence of the plaintiff in error does not differ materially from what has just been said, except that he says he did not hear any demand for admission before the door was broken into or at any time until defendants in error came to his room door which opened into the hall, and he then heard them say, "If you don't open the door I will kill you;" that this is all he heard them say which he could understand.

Mrs. McCaslin says she heard them trying to get into the back hall door, "beating on it, saying something." She also testifies that when the defendants got to the door of the room in which she and her husband were at the time, they said: "If you don't open the door, we will kill you." She further says: "I did not hear them demand admittance until after they had got into the house, and had been in the east room and had come back to our door and said: 'If you don't open the door, we will kill you.'"

The defendants in error had no warrant of arrest.

Verdict and judgment were rendered in favor of the defendants, motion for new trial was made and overruled, and thereupon the plaintiffs appealed to this court, and have here assigned errors.

The first error concerns certain special pleas filed by the defendant. We need not consider this, as the questions raised under these pleas arise also under the objections made to the charge of the court in subsequent assignments which we shall now state.

The second assignment is that the court erred in charging the jury as follows:

"If you find that the defendants had received information that the felon, Lindsey, was at the plaintiff's house, and they honestly believed he was in the house at the time they made the entry, that a reasonably prudent man would have been justified in so believing from the information and circumstances which they had before them; and if you further find that the defendants while so believing, went to the plaintiff's house for the purpose of arresting the felon, Lindsey, and that the defendant gave the plaintiff notice of their intention to make such arrest, or informed him of their business there, and that the plaintiff refused to admit the defendants into his residence for such purpose, and did not inform them that the felon, Lindsey, was not there, then the defendants were justified in making an entry into the house by force, for the purpose of arresting the felon, even though it turned out afterwards that they were mistaken and that the felon, Lindsey, was not in fact in the house at

the time the entry was forced. If you find that the entry was made under the circumstances just stated, and that the defendants did not use unnecessary force or violence in making the entry, or on the plaintiff after they had made the entry, you should return a verdict for the defendant."

The third assignment is that the court erred in charging the jury as follows:

"If the defendant Harris went to the door of plaintiff's house and called out to the parties in the house, in substance, that he was an officer and wanted John ·Henry, and did this in a tone sufficiently loud to have been heard by the parties inside, and then waited a sufficient time for the parties within to have responded, and they made no response within a reasonable time, then this would be notice to the plaintiff and other parties inside the house of his intention to make the arrest of John Henry or Lindsey, and this would also amount to a refusal by the parties inside to admit them for that purpose. A failure to answer such a statement within a reasonable time would be equivalent in law to a refusal to admit the defendants."

The points made in criticism of the portion of the charge copied into the second assignment are that Lindsey had never been in the custody of defendants; they were not officers of Gibson county; they had no warrant of arrest; they were merely private citizens; the crime was not one recently committed, followed by a fresh pursuit; therefore they had no right to enter

plaintiff's house to arrest Lindsey, even with notice, and
that the circuit judge erred in instructing the jury that
defendants had such right. Furthermore, it is said, the
defendants had no legal right to enter the house of a
stranger on such an errand without a warrant, that
they entered at their peril, and if they failed to find the
felon on such entry, they became liable to make good all
injury sustained by the person whose home they en-
tered.

We think the defendants must be treated as private
persons attempting to make an arrest without a war-
rant.

What were their rights under the facts stated?

In order to a proper solution of the question, it will
be necessary to take a brief general view of our statutory
provisions upon the subject of arrest.

Shannon's Code, sections 6978-6991, contains direc-
tions concerning the issuing of warrants of arrest.

Sections 6992, 6993, and 6994 provide that "an arrest
may be made either by an officer under a warrant, [or]
by an officer without a warrant, [or] by a private per-
son;" that "arrests by officers for public offenses may be
made on any day and at any time;" and that "arrests by
private persons for felony may be made on any day and
at any time." Sections 6997 to 6999, inclusive, declare
the rights and duties of an officer arresting without a
warrant. These are substantially the same as the pow-
ers vested in private persons, as set out below, with the
exception that section 6997 provides that an officer may

without a warrant arrest for "a breach of the peace threatened in his presence," or "on a charge made, upon a reasonable cause of the commission of a felony by the person arrested." There is also another distinction, which we shall note later.

The following sections set forth the circumstances under which private persons may make arrests, viz:

"A private person may arrest another (1) for a public offense committed in his presence; (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it." Shannon's Code, section 7002. "He shall at the time of the arrest inform the person arrested of the cause thereof, except when he is in the actual commission of the offense, or when arrested on pursuit." Section 7003. "If the person to be arrested has committed a felony, and a private person, after notice of his intention to make the arrest is refused admittance, he may break open an outer or inner door or window of a dwelling house, to make the arrest." Section 7004. "A private person who has arrested another for a public offense, shall, without unnecessary delay, take him before a magistrate or deliver him to an officer." Section 7005.

It is insisted, however, that these provisions apply only to cases of original arrest, and not to a recapture after one accused of crime has been in custody and has

McCaslin v. McCord.

escaped therefrom, but that the latter class of cases is covered exclusively by the following sections, viz.:

"If a person arrested escape or be rescued, the person from whose custody he escaped or was rescued may immediately pursue and retake him, at any time and in any place within the State." Section 7006. "To retake the party escaping or rescued, the person pursuing may, after notice of his intention and refusal of admittance, break open any outer or inner door or window of a dwelling house." Section 7007.

The latter sections contain everything in the Code upon the subject of arrest after escape referred to in the briefs of counsel, or that we have been able to discover after an extended and careful examination, except sections 6686, 6931, subsec. 3, and sections 7568, 7260.

These sections read as follows:

"6686. Any person lawfully confined in any county jail or in the penitentiary upon conviction for a criminal offense, who escapes therefrom, may be pursued, taken, and again imprisoned," etc.

"7568. Whenever any convict in the penitentiary escapes therefrom it is the duty of the warden to take all proper measures for his apprehension," etc.

"7260. If a convict sentenced to death is at large, "the court or any magistrate may issue a warrant for his apprehenson," etc.

"6931. Justices of the peace are authorized and empowered . . . (3) to issue warrant for a prisoner escaped from jail."

Warrants of arrest may be issued not only by justices of the peace, but by the judges of the circuit and criminal courts, police, and other special justices appointed or elected in a city, village or town, and by the mayors and recorders of cities and towns upon whom criminal jurisdiction is conferred by law. Section 6975.

Such warrants may issue to any lawful officer of any county in the State. Section 6988. And when the sheriff, deputy sheriff, constable, coroner, or any other officer of any county in the State has in his hands a warrant or capias for the arrest of any person charged with the commission of a crime, it is lawful for such sheriff, deputy sheriff, constable, coroner, or other officer, to execute such process, and arrest the person so charged, in any county of the State. Section 6989. Nor is it true that the warrant may be issued only in the county in which the offense was committed; on the contrary, it may also be issued in any county in which the person sought to be arrested is found. *Johnston* v. *State*, 2 Yerg., 58. It is in itself a substantive crime to make an escape from a jail (section 6685), or from the penitentiary (section 6684, 7552, 7566).

We do not doubt that under sections 7006 and 7007 a private person would have the right to immediately pursue and recapture a person who had been lawfully arrested by him under sections 7002 to 7005, inclusive, and who had escaped from his custody. For an equal, or stronger reason we think that under these sections an officer would have the right to make such immediate pur-

McCaslin v. McCord.

suit and recapture, without a warrant, where a person charged with crime had escaped, whether from jail or from the personal custody of the officer.

We are of opinion, however, that these sections (7006, 7007) do not authorize either a private person or an officer to arrest, without a warrant, a person who has escaped from jail or from custody when the pursuit is not immediate or fresh. Nor do we think that sections 7002 to 7005, inclusive, authorize any private person to make an arrest for an escape, except in those instances in which the escape itself is by law a felony. Sections 6684, 7552, 7566.

With the exception last stated, and with the further exception of immediate pursuit for recapture under sections 7006 and 7007, there is no authority conferred by our statutes upon either an officer or a private person, without a warrant, to make an arrest for an escape.

Moreover, it is not in accord with sound policy that the authority referred to should be greater, since the invasion of the privacy of the citizen in his home is an extreme hardship, always tends to conflict and bloodshed, and may be undertaken by nefarious persons for criminal purposes. It may be added that in view of the ample provisions made for the issuance and service of warrants of arrest, above referred to, there is no danger that the administration of the criminal laws of the State will suffer by reason of the construction herein given to the statutes.

What has just been said is not in conflict with *Eanes* v. *State*, 6 Hump., 53, 44 Am. Dec., 289, nor with *Lewis* v. *State*, 3 Head, 128. In the first case the officer, without a warrant, arrested one, who had, as he believed upon reasonable grounds, committed a felony in another county and was passing through the officer's county, fleeing from justice. In the second case the officer pursued, and attempted to arrest without a warrant two persons, who had, as it appeared to him upon reasonable grounds, recently committed a felony within his county, and were going out of the county.

Our statutes, as we have construed them, are in some points at variance with the common law, but we need not go into that phase of the matter, as we think the legislature, in the sections which we have quoted, intended to cover the whole subject of arrest without warrant, by a private person.

As to whether a private person, without a warrant, may break an outer or inner door or window of a dwelling house, there appears to be a distinction taken in the statutes between cases of original arrest, and those in which there is a fresh pursuit immediately upon an escape. In the latter case it is said, the person pursuing may, after proper notice, "break open any outer or inner door or window of a dwelling house." Section 7007. So, it is declared, in respect of an officer, in a preceding section: "To make an arrest, either with or without a warrant, the officer may break open any outer or inner door or window of a dwelling house, if, after notice of his

office, authority and purpose, he is refused admittance." Section 6999. In respect of original arrests by private persons the language is: "If the person to be arrested has committed a felony, and a private person, after notice of his intention to make the arrest, is refused admittance, he may break an outer or inner door or window of a dwelling house, to make the arrest." Section 7004.

The difference in language upon a casual view appears to be slight, being only that between "an" and "any;" yet upon a deeper consideration it appears to be a vital distinction, viz., that between the home of the person sought to be arrested, and the home of a stranger.

We are of the opinion that under section 7004, a private person seeking to make an arrest for felony may break open an outer or inner door, or window, of the dwelling house of the person sought to be arrested, but not of a stranger; but that having arrested a person for a felony, such private person may, upon an attempted escape from his custody, upon immediate and fresh pursuit, break open the outer or inner door or window of any dwelling house, in which the fleeing criminal has sought refuge, that is, of the person sought to be arrested or of another, under section 7007, on complying with the terms and conditions set forth in that section.

The same distinction appears to exist elsewhere. It is held that where an officer has reasonable cause to believe that the person named in the warrant, or a person whom he seeks to arrest on a charge of felony, is in the dwelling house of another, he has a right to search the

house, and, after demand for admittance and notice of his purpose to break open doors if necessary to prosecute his search (*Com.* v. *Reynolds,* 120 Mass., 190, 21 Am. Rep., 510; *Com.* v. *Irwin,* 1 Allen, 587; *State* v. *Hunter* [N. C.], 8 L. R. A., 533, note; 3 Cyc., 892, par. 4; *State* v. *Brown,* 5 Har. [Del.], 505; *Barnard* v. *Bartlett,* 10 Cush. [Mass.], 501, 57 Am. Dec., 123) ; and that upon fresh pursuit a private person has a right to break open the doors of any house in which the felon has taken refuge (*Brooks* v. *Com.* 61 Pa. St., 352, 100 Am. Dec., 645; 4 Black. Com., 292) ; and see *Com.* v. *McGahey,* 11 Gray (Mass.), 194. Again, it has been held that an officer has the right to enter at night the house of one whom he suspects of having committed a felony, and arrest him without a warrant (*Davis* v. *Russell,* 5 Bing., 354) ; but that a private person cannot (*Ryan* v. *Donnelly,* 71 Ill., 100).

There is one other distinction between the right of an officer to make an arrest and that of a private citizen. This has already been referred to in general terms but will now be more distinctly noted.

It will be observed that an officer, in addition to the right conferred upon a private citizen, is given the right to arrest without a warrant, "on a charge made, upon a reasonable cause, of the commission of a felony by the person arrested." Section 6997, subsec. 4. In respect of private persons, the language is, "when the person arrested has committed a felony" (section 7002 [2], and, "when a felony has been committed" (section 7002

McCaslin v. McCord.

[3]).   The difference in phraseology is significant.   A private person making an arrest for an offense not committed in his presence, in order to justify must be able to show by a preponderance of the evidence that a felony has been committed; on proving this, he may complete his justification, by showing that he had reasonable cause to believe that the person arrested committed it. Section 7002 (3).   On the other hand, an officer may justify by showing that a charge had been made of the commission of a policy, and that he had reasonable cause to believe that such felony had been committed and that the person arrested had committed it.

Before applying the foregoing principles to the charge of the court, we deem it proper to say that we do not think it was within the contemplation of our statutes that private citizens of one county should take it upon themselves to go into other counties, without a warrant, in search of criminals, except in cases of fresh pursuit of a fleeing  felon endeavoring to avoid immediate capture, in an original arrest, or on immediate pursuit after arrest and escape.   An opposite view and practice would lead to more violence than it would suppress, since it would foster the incursion of roving bands of strangers who might be easily counterfeited by bands of marauders.

On the principles stated, we do not think that the portion of his honor's charge quoted under the second assignment can be sustained.

It is true the person the defendants were searching for

had been previously arrested and lodged in the jail of Henderson county upon a charge of arson, a felony, and was there awaiting his trial on appeal to the supreme court, when he escaped, and went over into Benton county and thence into Gibson county; but the defendants in the latter county occupied the status only of private citizens, they had no warrant, the person they were seeking to arrest had never been in their custody, had not escaped from them, and they were not in fresh pursuit, and the dwelling they entered was not that of the person to be arrested but the home of a stranger.

The second assignment of error must therefore be sustained.

The first assignment must also be sustained. This applies to certain special pleas, the fourth, fifth, and sixth, filed by defendants. The grounds on which we have sustained the second assignment necessarily lead to the conclusion that the defenses contained in these pleas were not valid ones, and that the motion to strike out these pleas should have been sustained.

The first and second assignments having been sustained, it is unnecessary to consider the third.

The judgment of the circuit court must be reversed, and the cause remanded for a new trial.