ROBERT S. SMITH *et al. v.* MIKE G. TATE *et al.**

(*Nashville.* December Term, 1920.)

1. **APPEAL AND ERROR.** Testimony considered most favorably to prevailing party.

   Where the evidence was materially conflicting, the supreme court must take that view of it most favorable to the parties who were successful before the jury. (*Post, p.* 270.)

2. **SEARCHES AND SEIZURES.** Evidence held to sustain finding sheriff had cause to believe felon was in defendant's house.

   In actions against a sheriff and his deputies and surety for wrongful entry in plaintiff's house, evidence that a marshal informed the sheriff and his deputies that one who had committed a murder had gone to the house of plaintiff, who was his uncle, *held* sufficient to show that the sheriff and his deputies had reasonable grounds for believing that the person wanted was in the house. (*Post, pp.* 270-273.)

   Case cited and approved: Frazier v. State, 117 Tenn., 430.

3. **SEARCHES AND SEIZURES.** First ten amendments to United States Constitution not restrictions on States.

   The first ten amendments to the United States Constitution are limitations on the powers of the federal government, not on the powers of the several States, so that, there is no merit in an assignment of error based on the alleged invalidity of Thompson Shannon Code, section 6999, as violating Constitution U. S. Amend. 4, prohibiting unreasonable searches and seizures. (*Post, pp.* 273, 274.)

   Cases cited and approved: Barron v. Baltimore, 7 Pet., 243; Fox v. Ohio, 5 How., 410; Davis v. Texas, 139 U. S., 651; Brown v. New Jersey, 175 U. S., 172; Safe Deposit Co. v. Stead, 232 U. S., 58.

---

*On entry and search of premises for purpose of arresting one without search warrant, see note in 5 A. L. R. 263.

Smith v. Tate.

Code cited and construed: Sec. 6999 (T.-S.).

4. **ARREST.** Sheriff without warrant can enter house where he reasonably believes felon is.

A sheriff in seeking to arrest one who has committed a felony, though he has no warrant for the arrest, can enter a house, breaking it open, if necessary, where he reasonably believes the felon then is, under Thompson-Shannon Code, section 6999, defining the powers of an officer to make arrests. (*Post, pp.* 274-277.)

Cases cited and approved: McCaslin v. McCord, 116 Tenn., 690; Monette v. Toney, 119 Miss., 846; Hawkins v. Com., 14 B. Mon. (Ky.), 395.

Case cited and distinguished: Com. v. Phelps, 209 Mass., 396.
Code cited and construed: Sec. 6999 (T.-S.).

---

FROM SHELBY.

---

. Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. A. B. PITTMAN, Judge.

JNO. E. BELL and SETTLE & BENTLEY, for plaintiffs in error.

C. M. BRYAN and METCALF & METCALF, for defendants in error.

MR. E. J. SMITH, Special Judge, delivered the opinion of the Court.

These are three suits instituted by Robert Smith, Mattie Smith, his wife, and George Smith, their son, against

M. G. Tate, as sheriff of Shelby county, R. B. Wilroy, H. M. Palmer, and Ed Bradley, deputy sheriffs, and the United States Fidelity & Guaranty Company, as the surety on the sheriff's official bond.

The suits are based on the alleged wrongful act of the sheriff and his deputies in entering the home of Robert Smith, and after such entrance assaulting and wounding Robert Smith, his wife, and their son.

The cases were consolidated in the trial court and tried together, and as a result thereof the jury rendered a verdict in favor of all the defendants, which was approved by the trial court, and on appeal affirmed by the court of civil appeals. The Smiths have filed a petition for *certiorari* in this court.

As the respondents here were successful before the jury, on evidence which was materially conflicting, it is our duty to take that view of the evidence most favorable to the respondents herein.

On Sunday night, September 17, 1917, between 9 and 10 o'clock, Mr. Tate, the sheriff, received a telephone call from the marshal of Bartlett, about seventeen miles distant from Memphis, in Shelby county, and was told that a murder had been committed there, and was requested to come out. The sheriff thereupon got in telephone communication with the three deputies, who, coming from their respective homes to the home of the sheriff, drove to Bartlett in two automobiles, reaching there about 11:30 o'clock or a little later. There they were met by the marshal of the town and several of the citizens, who informed

them that one Benny Smith had killed a man in a crap
game during the earlier part of the evening and had gone
to the place of his uncle, several miles distant from Bart-
lett, and that, if they, the sheriff's party, would go with
them, they would point out the place to which Benny Smith
had gone a short time before.

The sheriff's party and four or five of the citizens went
in pursuit of Benny Smith. The party was taken to the
home of the plaintiff Robert Smith, who was, as above
stated, an uncle of Benny's. Two of the party went to one
of the houses there and awakened the occupants, one of
whom was Curtis Smith, a son of the plaintiff Robert
Smith. He went with the deputy next door, a short dis-
tance away, to the home of his father, telling the deputy
that Benny might be at his father's house. Certain of the
sheriff's party had in the meantime knocked at the door of
the plaintiff, and had informed the occupants of their
official character and asked admittance for the purpose of
arresting Benny Smith. There was some stirring within,
and the sheriff directed one of the deputies to go to the back
of the house to prevent the escape of Benny Smith. When
the deputy reached there he found the door open and the
wife of Robert Smith near by. Mr. Wilroy, a deputy, alone
entered through the back door, which was open, into the
room where Robert Smith was sitting with a high-powered
rifle across his lap. After a friendly assurance to the
plaintiff Robert Smith that no harm was meant to him,
he (Robert Smith) and Mr. Wilroy, a slender, frail deputy

sheriff, together sat on the trunk which was near the bed of Robert Smith and his wife.

A moment or two later Mr. Palmer, one of the deputy sheriffs, following Mr. Wilroy to the rear of the premises, followed him into Robert's room, and behind him came the third deputy, Mr. Bradley, the sheriff remaining at the front of the premises.

As Robert Smith observed the two deputies entering the room, Bradley in the rear of Palmer, he (Robert) arose from the trunk where he was sitting, and fired his Winchester rifle at the two approaching deputy sheriffs, missing them, the ball evidently going on out into the open through the open door through which they entered. As Robert Smith raised to fire, Bradley threw his body against Robert in an effort to wrench from him the rifle. The two scuffling fell together on the bed, Robert Smith getting the better of Mr. Bradley. The plaintiff was a large, powerful, and muscular negro. Mr. Bradley had shortly before had an operation for hernia and had lost in weight from fifty to seventy-five pounds. Mr. Palmer, seeing that the negro was about to overpower Bradley, and in order to compel a release of the rifle, but with no intention of doing Smith other than necessary injury to make him release his grasp, shot him through the hand. This had no effect on the negro, and Palmer then shot him in the shoulder, and the negro released the rifle.

Mattie, the wife, picked up the rifle which her husband had released when shot, and Bradley was seeking to take

it away from her, scuffling with her from room to room, when Palmer lightly struck her over the head with the butt of his pistol and made her release the Winchester rifle.

At that moment there came from the adjoining room, which was without light, George Smith, a big, powerful negro of about thirty years of age, who attacked Palmer, but Palmer without shooting him, struck him on the head with the butt end of his pistol, felling him and breaking a piece of the bone handle of his weapon. The officers did not have a warrant for the arrest of Benny Smith.

From the foregoing statement of facts, which was evidently accepted by the jury in finding a verdict in favor of the respondents, we are of the opinion that the sheriff and his deputies had reasonable grounds for believing that Benny Smith, the alleged culprit, was in Robert Smith's house, and this disposes of the first and second assignments of error.

The fifth assignment of error, complaining of a portion of the charge of the trial judge, has been examined and found free from any prejudicial misdirection. In our opinion this instruction was more favorable to the petitioners than they could claim under the decision of this court in *Frazier* v. *State,* 117 Tenn., 430, 100 S. W., 94.

The fourth assignment of error is based on the alleged invalidity of section 6999, Thompson's Shannon's Code of Tennessee on the ground that the same is in violation of the Fourth Amendment to the Constitution of the United States, prohibiting unreasonable searches and seizures.

It is, of course, elementary that the first ten amendments to the Constitution of the United States are limitations on the powers of the federal government, and not on the powers of the several States. *Barron* v. *Baltimore,* 7 Pet., 243, 8 L. Ed., 672; *Fox* v. *Ohio,* 5 How., 410, 12 L. Ed., 213; *Davis* v. *Texas,* 139 U. S., 651, 11 Sup. Ct., 675, 35 L. Ed., 300; *Brown* v. *New Jersey,* 175 U. S., 172, 20 Sup. Ct., 77, 44 L. Ed., 119; *Safe Deposit Co.* v. *Stead,* 232 U. S., 58, 34 Sup. Ct., 209, 58 L. Ed., 504.

There is therefore no merit in the fourth assignment of error, and it is accordingly overruled.

The real contest in this case is as to whether or not the trial court properly instructed the jury with reference to the right of an officer to enter the house of a stranger; he having reasonable grounds to believe that a felon was therein. It is conceded that the trial judge in charging the jury defined the rights of an officer under section 6999, Thompson's Shannon's Code, in accordance with the decision of this court in the case of *McCaslin* v. *McCord,* 116 Tenn., 690, 94 S. W., 79, 8 Ann. Cas., 245, but it is insisted that so much of that opinion as deals with and defines the right of an officer in entering a house to arrest a felon is mere *dictum,* and if not, that such construction by this court is palpably erroneous and should not be followed.

The determinative question therefore presented for decision turns on the proper construction of section 6999, Thompson's Shannon's Code.

The opinion in *McCaslin* v. *McCord, supra,* was delivered by Mr. Justice Neil, who, in a painstaking and exhaustive manner, examined and compared many of our statutes regulating the rights of officers in making arrests and entering premises for that purpose, and as a result of this examination it was concluded that, where an officer has reasonable cause to believe that the person named in the warrant, or a person whom he seeks to arrest on a charge of felony, is in the dwelling house of another, he has a right to search the house, and, after demand for admittance and notice of his purpose, to break open doors, if necessary, to prosecute his search.

In the above-cited case all of the statutes of the State touching the rights of private persons making arrests as distinguished from the rights of officers were carefully examined and compared, and, whether the holding of the court in the above-cited case be technically a *dictum* or not, we are satisfied from a re-examination of the question, as well as of the supporting authorities cited therein, that the court reached a correct conclusion, to which we adhere.

In *Com* v. *Phelps,* 209 Mass. 396, 95 N. E., 868, Ann. Cas., 1912B, 566, it is said:

"An officer who has the right to arrest without a warrant because he suspects on reasonable grounds that the defendant, has committed a felony has a right to break open doors. That may be taken to be settled now."

In a note to this case it is said: "The reported case is apparently the only case directly in point as to the right of an officer to break open doors and arrest without a war-

rant on suspicion of a felony. The rule therein laid down, however, that an officer has such a right is supported by statements of the old text-writers and by *dicta* in two decisions."

In *Monette* v. *Toney*, 119 Miss., 846, 81 South., 593, 5 A. L. R., 261, it was held that, in order to make the arrest of a person charged with crime, a police officer has the authority to enter and search any dwelling house, when he acts upon probable cause and reasonable belief that the person whom he seeks is there in such dwelling house.

Appended to the above-cited case as reported in 5 A. L. R., 261, there is an elaborate annotation, an examination of which shows that the majority rule in this country is in accord with the decision of the principal case, and therefore in accord with the holding of this court in *McCaslin* v. *McCord, supra.*

In 2 R. C. L., p. 476, the text in support of the majority rule is based on *McCaslin* v. *McCord, supra,* and other cases cited therein. The authors cite in support of the minority rule a number of cases, including *Hawkins* v. *Com.*, 14 B. Mon., (Ky.), 395, 61 Am. Dec., 147, which are the authorities relied on by the petitioners in the case at bar.

Holding, as we do, that, under respondents' version of the facts, which was accepted by the jury, and which is, of course, binding on us, the respondents had reasonable cause to believe that Benny Smith had taken refuge in the house of his uncle, Robert Smith, it follows that the respondents, as peace officers, although without a warrant,

had the right, after giving notice of their authority and purpose, to enter the house and search the same for the felon believed by them, on reasonable grounds, to be therein.

Being lawfully in Robert Smith's house, what thereafter happened as to the shooting and whether the respondents were acting in their proper self-defense in that regard was submitted to the jury under a correct charge of the court and on testimony which was materially conflicting. According to the respondents' testimony, they were acting in their proper self-defense when the shooting occurred, and, as this testimony was accepted by the jury, it is, of course, binding on this court.

This disposes of all the assignments of error filed by the petitioners, and as a result the judgment of the court of civil appeals is affirmed.