ERNEST STACY, v. J. S. KELLER.

Middle Section.   July 8, 1925.

No petition for Certiorari was filed.

1. **Appeal and error. Appellate court is bound by finding of lower court if there is any material evidence.**
   When there is some material evidence to sustain the judgment, in law case, the appellate court is bound by the finding of the lower court.

2. **Negligence. Not negligence as a matter of law for driver of automobile to collide with stock.**
   In an action to recover damages for killing plaintiff's mare, held it is not negligence as a matter of law for the operator of an automobile to collide with stock in the road. To recover the plaintiff must show that the party was guilty of negligence or was violating the law.

3. **Negligence. Ordinarily negligence is a question for the jury.**

The question of negligence and the degree of care varies with the situation and surroundings. It is necessarily therefore, a question of fact to be submitted under proper instructions to a jury, or, in the absence of the jury, to the Court.

4. **Negligence. Evidence held not to show plaintiff's negligence in killing defendant's mare.**

In an action to recover damages for the killing of plaintiff's mare where all eye witnesses testified that automobile was going slowly, about eight or ten miles per hour, and mare suddenly turned and ran in front of the car, held that evidence sustained the finding of lower court that defendant was not negligent.

5. **Appeal and error. Evidence on appeal construed most favorable to winning party.**

When the question is a controverted one, it is the duty of Appellate Court to take the view of the evidence most favorable to winning party.

Appeal in Error from Circuit Court, Franklin County, Hon. Jno. T. Raulston, Judge.

Affirmed.

J. B. Templeton, Winchester, Attorney for plaintiff in error, Stacy.

Frank L. Lynch, Winchester, Attorney for defendant in error, Keller.

CROWNOVER, J. This was an action instituted before a Justice of the Peace for damages for the negligent killing of plaintiff mare, by a collision with an automobile driven by defendant's son at night on the Dixie Highway between Cowan and Sewanee in Franklin county. The justice rendered judgment for $100, and the case was appealed to the circuit court, where it was tried by the judge without a jury, who rendered judgment for the defendant and dismissed the suit, taxing the plaintiff below with the cost. The plaintiff excepted, appealed to this court and assigned two errors which are as follows:

"1st. The court erred in rendering judgment in favor of the defendant and against the plaintiff for the cost of the cause because there was no evidence produced on the trial of the cause to support such a verdict or judgment. And because the evidence produced on the trial of this cause preponderates in favor of the plaintiff and judgment should have been rendered against the defendant for $125, and the cost of the cause."

"2nd. The court erred in taxing plaintiff with the cost of the cause, because the evidence preponderates in favor of the plaintiff and he should have recovered judgment for $125, and the cost of the cause"

By an analysis of these two assignments of error, it will be seen that they both go to the preponderance of the evidence, and that

it is insisted that judgment should be rendered for the plaintiff for $125, as the evidence preponderates in his favor, although the assignment does state that there was no evidence to support the judgment.

It is well settled that this court does not weigh the evidence, and when there is some material evidence to sustain the judgment, in law cases this court is bound by the finding of the lower court. See 5 Michie's Ency. Dig. Tenn. Rep. 102., etc.; Chattanooga Machinery Co. v. Hargroves, 3 Cates 476.

But as the plaintiff in error insists that there was no evidence to support the judgment, we have examined the record carefully to see whether there was any material evidence to sustain the judgment.

The proof shows that the defendant was the owner of the automobile and that it was being driven by his minor son on the highway at the time of the accident, and that he was engaged in driving some people from Cowan to their home on the side of the mountain for hire. It is admitted that the car belonged to the defendant and that the driver was on this mission at the time the accident happened, but no question is made that the driver was not in the employ of the owner and on his business within the scope of his employment at the time the accident occurred.

The proof further shows that while on this mission on said highway the driver and the occupants of the car saw three horses about one hundred feet away "dancing or prancing" around on the highway. The car was running at the rate of from 17 to 20 miles per hour, and they slowed down to 8 or 10 miles per hour, before reaching the horses. The plaintiff's mare ran across the road and upon an embankment, and as the driver proceeded with the car she suddenly plunged down into the road and was struck by the car, and as a result of the impact, both of her hind legs were broken and she was otherwise injured to such an extent that she had to be killed on the following day.

Only two eye-witnesses were examined, the driver and one occupant of the car named Clark. Both testified substantially to the facts above detailed, and say that the accident could not have been avoided; that as soon as they saw the mare rushing back into the road the driver applied the brakes and attempted to stop the car. However, it is insisted by the plaintiff in error that on the next day, he and other witnesses went to the scene of the accident and from the appearances of the road, they ascertained that it was 84 feet from where the accident occurred to where the mare was found lying in the ditch, that they found blood and hair where the accident occurred, but there was no evidence that the mare had dragged herself to the place where she was found, and that she was evidently

struck with such force as to knock her 84 feet. He farther insists that the witness Clark stated to an officer and other witnesses, on the morning after the accident, that the car was running 25 or 30 miles per hour at the time of the accident. The plaintiff there- fore insists that, under the physical facts and the statement of the witness Clark, that said car was running from 25 to 30 miles per. hour. and that therefore, the defendant was guilty of negligence in running a car in violation of the statute and in injuring the mare. We think that contention is untenable, as the only two eye- witnesses testified that the car was running from only 8 to 10 miles per hour at the time of the accident and that the mare suddenly plunged in front of the automobile.

"It is not negligence as a matter of law for the operator of an automobile to collide with an individual in a street. To recover the plaintiff must show that the party was guilty of negligence or was violating the law." See, Cochran v. Pavise, 1 Hig. 1.

"A driver of an automobile is not negligent as a matter of' law in speeding up to pass a heifer in the road when the heifer jumps in front of the car, or where hogs suddenly dart into the highway, or if a horse runs diagonally across the highway. but the driver of the automobile is negligent if he runs at such speed and so close to the animal that when the animal turns the wrong way, the driver is unable to avoid it." See, Babbitt on Motor Vehicles, 3 Ed., sec. 1559."

If a hog suddenly darts into the road under a passing automobile, the motorist is not liable. See, Hester v. Hall (Ala. App.), 81 Son Rep. 361.

Under the statutes, Franklin county has a fence law and live stock is permitted to roam on the commons, and therefore, no question is raised as to these horses being trespassers. (Rail- road v. Smith, 9 Heisk., 865.) These horses had been on a pas- ture owned by one Miller, and in some way had broken out of the enclosure and had gone out into the highway, Hence, the driver owed them the same duty that he owed any other pedestrian; and where the negligence of the driver is the proximate cause of the in- jury the owner is liable. See, Ensley Mercantile Co. v. Otwell, 142 Ala., 572.

One question has given us some concern, and that is, the driver and the occupants of the car admitted that they saw the mare or horses about 100 feet ahead "prancing or dancing around." From this it might be insisted that they were frightened, but that question was not pressed and there was no proof (other than this), that the horses were frightened, or that the driver knew that they were frightened. One of the defendant's witnesses does say

that the mare, that was injured, was "wild and a fool," and that the plaintiff had told him that she was afraid of automobiles, but there was no proof that the driver knew these facts and the question about the animal being frightened was not pressed or insisted upon at the trial in the court below.

"Independently of the statute, it is the duty of the operator of an automobile to exercise due care in the management of the machine while using it upon the highways of the State. The degree of care varies with the situation and surroundings. It is necessarily therefore, a question of fact to be submitted, under proper instructions, to the jury.

"And the driver is onerated with the duty of operating his machine with such reasonable care and circumspection as to avoid scaring animals.

"We hold it to be a common law duty for an operator of a motor car to be active, vigilant and circumspect, in order to avoid collision and injuries resulting from frightening animals that may lawfully be on the highways, etc."

"All of the authorities hold that if the operator ought to have, in the exercise of ordinary care, discovered that the machine was frightening horses, he will be onerated with the duty of taking due care, and that his contention that he did not know that the animals frightened is no defense . . .

"The rule seems to be that if the animal shows fright at or about the time the machine is opposite him, it is left to the good judgment of the operator under the circumstances to determine (with prudence, however), whether it is best to stop or move on. But when the proof shows or tends to show that the frightened condition of the animal was discovered or discoverable at a considerable distance from where the animal is, the duty to stop the machine is required as a matter of law." See, Telephone Co. v. Burns, 1 Hig., 148.

"Like all other questions of negligence the degree of care required of the driver of an automobile is relative and dependent upon the circumstances of each case. 29 Cyc. 415; House v. Cromer, 134 Iowa, 374. It is the duty of the operator of the automobile to keep his machine always under control so as to avoid collisions with pedestrians and other persons upon the highways. He cannot assume that the road is clear but he must at all times be vigilant, and anticipate and expect the presence of others. Lawson v. Fond du Lac, 141 Wis. 57. While he has the right to presume that both pedestrians and others using the highway will use due care, he is under a like duty with respect to every one else, taking in consideration the character of his vehicle. Weil v. Kreutzer, 134 Ky., 563.

"Hence whenever a person operating an automobile knows, or in the exercise of ordinary care should know, that his machine is frightening a horse, or, in the situation in which he has left it, is likely to frighten a horse, he is bound at his peril to exercise due care to prevent an injury. Indiana Springs Co. v. Brown, 165 Indiana, 465." See, Coca Cola Bottling Works v. Brown, 139 Tenn. 645.

As above stated the suit is based on the idea that the car was being run at a dangerously high rate of speed in violation of the statute, and that the driver had negligently or recklessly driven the car against the mare, causing the injury. In fact, there is no proof that the driver knew that the horses were at all frightened. The question of negligence and the degree of care varies with the situation and surroundings. It is necessarily therefore, a question of fact to be submitted under proper instructions to a jury, or, in the absence of the jury, to the court.

The court saw these witnesses and heard them testify and this question was within his province. The question being a controverted one, it is our duty to take that view of the evidence most favorable to the winning party. See Gary v. Powell, 8 Hig., 365; Smith v. Tate, 143 Tenn., 268; Fairbanks-Morse Co. v. Gambill, 142 Tenn., 633. Hence the assignments of error must be overruled and the judgment of the lower court affirmed. The cost of the appeal is adjudged against plaintiff in error, Stacy, for which execution may issue,

Faw, P. J., and DeWitt, J., concur.