Nelson, J.,
delivered the opinion of the Court.
The plaintiff in error was indicted in the Criminal Court of Montgomery county, for feloniously taking and carrying away one large bay horse mule, the property of Elijah Lockert. He was convicted on his trial, *112 and sentenced to thirteen years confinement, at hard labor, in the penitentiary; and it was also adjudged that he be rendered infamous and disqualified to give evidence, or exercise the elective franchise, or hold any office under this State, and that he pay the costs of this prosecution, &c.
The indictment is founded on the Act of 17th May, 1865, c. 5, sec. 1, which provides “that whoever shall take, or steal, any horse, mule or ass, shall, on conviction' thereof, suffer death by hanging; provided, the jury before whom the case is tried shall, if they think proper, commute the punishment to imprisonment in the penitentiary for the period of not less than ten nor more than twenty-one years.”
The 4th section contains a proviso “that nothing in this Act contained shall be construed as' repealing the laws now in force for the punishing of the offenses mentioned in this Act; but all persons who have heretofore committed any of the offenses mentioned in this Act, shall be tried under the existing laws, and, if convicted, shall be punished as now prescribed by law.” The offense of horse stealing, as then prescribed by law, is thus defined and punished: “Whoever shall feloniously take, or steal, any horse, mule or ass, shall be imprisoned in the Penitentiary not less than three nor more than ten years.” Code, 4686.
Applying well known rules of construction to these statutes, we hold that the first section of the Act of 1865 does repeal the Code, 4686, so far as any of fenses, within the purview of the statutes, have been committed since 17th May, 1865; but the intention of *113 the Legislature, in the said fourth section, was, to continue the old law in force as to all offenses committed previous to the 17th May, 1865, and to allow trial, conviction and punishment under it.
The first section of the act of 1865 is inconsistent with the section quoted from the Code, and therefore repeals it. See Roberts v. The State, 2 Tenn. R., 425, marg.; Cooper’s Overton, 769, foot p. The proviso in the 4th section, “that nothing in this act shall be so construed as repealing the laws now in force,” &c., must be taken in connection with what follows in the proviso, and as meaning that the previous laws are to remain in force as to offenses committed before 17th May, 1865.[1] Any other construction would make the proviso so repugnant to the first section as utterly to destroy it, and would defeat the Legislative will; and the first section and the proviso should, with the view of giving effect to the will of the Legislature, be so construed as that both provisions may stand. In Bennett v. The State, 2 Yer., 73, it was ad *114 mitted that affirmative statutes often repeal each other by implication; as was effected by the first section of the act of 1865; but it is correctly said in the same case that “when it is manifestly the intention of the Legislature that a subsequent act of Assembly shall not control the provisions of a former act, the subsequent act shall not have such operation, even though the words, taken strictly and grammatically, would repeal the former.” This rule applies with peculiar force to the proviso in the third section, which, construed literally, would defeat the intention of the Legislature, that intention being two-fold: first, to raise the grade of the offense of horse stealing to a capital crime; and, secondly, to continue the former statute in force as to all offenses committed previous to its passage.
We are unable to perceive that the act of July 6, 1870, c. 115, p. 175, is in conflict with the Constitution of 1834 or 1870. Article 6, sec. 1,- of each Constitution, authorizes the Legislature from time to time, to ordain and establish inferior courts; and we are not satisfied that the power to establish a criminal corn't was not rightfully exercised in this, as it had been previously in various similar cases.[1]
*115 The objection that the indictment is double, is untenable. Although the language of the statute is, “take or steal any horse, mule,” &c., the offense is one and the same: See 1 Bish. Cr. Law, 4th Ed., § 803; State v. Arnold Ailey, ante, p. 8. It is difficult to imagine how any one could feloniously take a horse without stealing him, or feloniously steal without taking. The indictment would have been more accurate, perhaps, if it had charged, according to the old form, that the defendant feloniously stole, took and rode, drove or led the mule away, instead of charging that he carried him; but this is doubtless good under the Code.
In the progress of Stephen Cole’s examination as a witness, the record states as follows, viz:
“Question by State’s Attorney. — Did you have a mule stolen from you about this time? Objected to by defendant’s counsel, and the objection sustained.
“Question by same. — Did you lose a mule about the time this mule was stolen? the witness having stated the exact date. This question was objected to by defendant as irrelevant and prejudicial. The Court permitted the State to prove that Stephen Cole lost a mule about that time, which Stephen Cole did prove, in order to fix the time this one was stolen. In answer to defendant’s counsel, witness stated that he was prosecuting defendant for stealing his mule, on an indict *116 ment now pending in this court. The witness stated: My mule was first missed on Saturday morning; I looked for it to haul wood with, and could not find it,” &o., &c.
No rule of criminal law is better established than that the evidence shall be confined to the case in issue; but when guilty knowledge, in its technical sense, is part of the charge contained in the indictment, as in cases of receiving goods, knowing them to be stolen; or passing counterfeit money, knowing it to be counterfeit, and the like, evidence of other acts, similar to those charged in the indictment, is admissible to establish this most important allegation in the indictment. In this case, evidence as to the loss of another mule by a person not named in the indictment, and at the same time as. the mule therein mentioned, was calculated to prejudice the defense. Time could have been proved without refera ing to another criminal charge. The cross-examination shows that, when the witness spoke of the loss of his mule, he referred to another felony of which the defendant stood accused, and the inadmissibility of the evidence was thus clearly manifested, and falls within the general principles stated in Lancaster & Smith v. The State, 3 Cold., 343, 344; Shaw v. The State, 3 Sneed, 88; Kinchelow v. The State, 5 Hum., 12.
It is scarcely probable that without any cross-examination the jury could have understood the “loss referred to as relating to any other than a stolon mule, and the defendant was impelled, by the very nature of the question, to make this manifest.
There are several propositions in his Honor’s charge to the jury which we hold to be erroneous as stated. *117 “1st, it is said that when there is conflicting testimony, it is for you to determine, under your oath, who and what testimony you will believe. The Court can lay down no rule as to this, because it is a matter of judgment and conscience for the jury alone, as are all the facts and circumstances of the case.” There was evidence in the cause tending to discredit Sylvester Lewis, a man of color, who was a material witness for the State, and who denied making a statement at Chris. Hickerson’s saloon, in the' hearing of the witness, to the effect that “the mule was found in my [Lewis’] possession, and that I [Lewis] must tell some tale to save myself.” Witnesses were also called to impeach the impeaching witness. Under these circumstances, the charge of his Honor was calculated to impress the minds of the jurors with the belief that they could exercise an arbitrary and uncontrolled discretion as to the witnesses to whom they would give credit. Such is not the province of the jury. The rules of evidence are fixed and established, and should in all cases of conflict, be stated to the jury for their guidance: as, for example, that in forming their opinion as to the credit of witnesses, they may look to the proof as to general character, if there be any; to the manner and demeanor of a witness; the consistency or inconsistency of his statements; their probability or improbability; his ability and willingness to speak the truth; his means of knowledge, and other criteria which may aid in the formation of a satisfactory conclusion. Such instructions may be appropriately given without invading the province of the jury, whose duty it is to weigh every part *118 of the evidence, and whose “judgment and conscience” may often be materially aided by the enlightened instructions and superior knowledge of the Court.
2. His Honor instructed the jury that “recent possession of personal property, proven to have been stolen, unexplained, and in the absence of previous good character on the part of the defendant, is plenary proof of the guilt of the person in whose possession the property is found, and the jury can have no reasonable doubt. If, from the whole body of the testimony such possession is explained; or if a good character be proven, this presumption of law would be rebutted and would not exist.” As the record shows that the prisoner proved a good character, it is possible that this charge may not have operated to his detriment. But it is hazardous to speculate as to what an effect an erroneous charge may j>ro-duce. The recent possession of stolen property can not correctly be said to afford plenary proof of the guilt of the prisoner, although it may be unexplained. It creates a strong presumption of guilt, which, like any other presumption, may be rebutted by facts and circumstances, and of the facts and circumstances the jury is to judge. And it was an invasion of the province of the jury for his Honor to declare that upon a given state of facts they could have no reasonable doubt. This was in effect, a determination by the Court as to the effect of evidence instead of the jury.
‡ ‡ ‡ ‡ ‡ ‡ ‡
4. No judgment of infamy or disqualification to hold office or exercise the elective franchise, is prescribed by the Act of 1865, c. 5. The offense of horse steal *119 ing is not specially mentioned in the Code, 5226, 5227, authorizing the judgment of infamy and disqualification, although larceny, receiving stolen property, stealing bills of exchange, and .other acts of stealing, are there especially enumerated. We are inclined to the opinion that although the offense of horse stealing would be included within the common law definition of larceny, yet as the Legislature has made it a separate and distinct offense in the Code and in the said Act of 1865, and as other acts of stealing are particularly named in Sections 5226 and 5227, that the judgment provided for in said sections can not be pronounced in a case of horse stealing. It can not be doubted that such an offense is within the spirit of those sections, but a judgment of such serious consequences can not be pronounced without direct authority of law, and it is beyond all question that it is not authorized by the Act of 17th of May, 1865.
Were this the only error in the record, it is probable that this Court could, under the provisions of the Code, reverse the judgment and pronounce the judgment which should have been pronounced on the finding of the jury, but it is not necessary to discuss that question, as the case must be remanded. We reverse the judgment for the other errors of law, without pronouncing any opinion whatever upon the facts.

 The same point arose in Gray v. The State, Nashv., 1871, Feb. 15 in which it was disposed of as follows: “It is * * insisted for the prisoner, that the Judge erred in telling the jury that they must fix his punishment according to the provisions of the first section of the act of 1865, c 5, and that he ought to have told them that, under the promo, they had a right to fix his punishment according to the Code, 4686. The charge of the Judge in this respect, was correct. Tne first section of the act of 1865, as to the punishment of feloniously taking or stealing any horse, mule or ass, is imperative on the jury, and being directly in conflict with the Code, 4686, repeals the same. The proviso to the fourth section of the act of 1865 was intended to leave the section, 4686, of the Code, in force as to the punishment of the offenses enumerated in the act of 1865, which had been committed before the passage of the act of 1865. The proviso is not framed in exactly artistic language, but the intention and object are too obvious to admit of serious doubt.” HicBratsoN, C. J.

 Tliis point was also decided in Gray v. State, Nashville, Feb. 15, 1871, as follows: “It is * * suggested that the act of July, 1870, conferring criminal jurisdiction on the County Court of Montgomery county, and providing for the election of a Judge and defining his powers and duties, is in violation of the Constitution of the State, adopted in 1870.”
This question was decided in the case of Moore v. The State, 5 Sneed, 510. That decision was made under the Constitution of 1834, but we are unable to see that the Constitution of 1870 contains any provisions which conflict with that decision. On the contrary, it may be assumed that the Constitution of 1870 was made with a knowledge of that decision, and with *115 the intention of ratifying the power therein conceded to the Legislature, of establishing such inferior courts. While such courts are subject to the repealing or amending power of the Legislature, they are constitutional, and the judges thereof are possessed of all the powers and jurisdiction conferred on them by the Legislature. Nicholsoh, C. J.