OPHIS LARRY WHITE AND DOROTHY MAI YORK,
Plaintiffs in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

356 S. W. 2d 411.

(*Nashville,* December Term, 1961.)

Opinion filed April 4, 1962.

William C. Wilson, Nashville, for plaintiffs in error.

George F. McCanless, Attorney General, Walker T. Tipton, Assistant Attorney General, Nashville, for the State.

Mr. Justice White delivered the opinion of the Court.

The plaintiff-in-error White was convicted of grand larceny and sentenced to serve not more than seven

years in the State Penitentiary, and the plaintiff-in-error York was convicted upon the same indictment and trial of feloniously receiving and concealing stolen property and sentenced to serve six months in the Davidson County Workhouse and to pay a fine in the amount of $50.00.

The motion for a new trial was seasonably made and overruled and now this case is before this Court on an appeal assigning several errors. The record discloses:

That Mr. A. E. McConnell owned and operated a Pie Bakery at 502 Main Street, Nashville, Tennessee, and that in April of 1961 said place of business was burglarized; the door of the large safe was torn loose from its hinges; more than $1600.00 in cash and $1500.00 in checks removed; a .22 caliber target pistol and a sack of old money containing somewhere in the neighborhood of thirty pieces were all missing from the safe. This witness described the old money as being two one-dollar gold pieces, a number of flying eagle pennies, a trade dollar, a form of old U. S. currency, according to the witness, and some other items. He identified the pistol as being his by showing that he kept the serial number in a book at his Bakery, and that the serial number corresponded with the serial number on the pistol introduced in open Court which had been taken from the room occupied by the defendants, as indicated hereafter. The witness also identified some one dollar bills as having been taken from his place of business as the same dollar bills that were recovered from these defendants or from their possession. For instance, one of the bills had the name of Theodore Roosevelt written on it and according to the witness he purchased this dollar bill during World War II. He also made positive identification of

some of the other money because of writing upon it or because of some peculiar marking. The witness also identified some of the pennies and particularly a penny that had written upon it the Lord's Prayer, and he also identified the trade dollar as well as two one-dollar gold pieces, which gold pieces the witness testified he had had in his possession for more than ten years.

Mr. McConnell testified that the safe had been damaged to the extent of approximately $200.00, and that his building had been damaged to the extent of about $1500.00 by the burglars in gaining entrance thereto.

After the burglary had been committed the police of the City of Nashville were notified and detectives Lillie and Burris were assigned the job of apprehending the person or persons who had committed the burglary. These same detectives were also assigned the job of investigating another burglary at a local restaurant from which an entire safe had been removed. While conducting their preliminary investigation of the burglary committed at the restaurant these officers contacted a fellow officer who had located the safe taken from the restaurant. This officer also informed these detectives that he had received information that the defendant White had been in the vicinity of McConnell Pie Company on the night that it was burglarized and he was being sought in connection therewith.

While they were investigating the burglary at the McConnell Pie Company one of these detectives received word from Sergeant Smith of the Nashville Police Department that he had received information that the defendant White was at a Motel on Dickerson Road in Davidson County, Tennessee. All of these officers went

directly to the Motel where they met and waited while Sergeant Smith knocked on the door of the cabin where the defendants were and informed them that he was Sergeant Morgan Smith of the Nashville Police Department, and requested them to open the door. Upon their failure to do so within a reasonable time, the Sergeant kicked the door open and entered the room.

When the officers entered the room they found the defendant White on the floor in the bathroom reaching through a hole in the bathroom floor, and the defendant York was in bed. Upon being removed from the bathroom one of the officers reached through the hole in the floor thereof and found a paper cup containing some old money. This old money was the same money identified by the prosecutor as having been removed from his place of business on the night that it was burglarized.

After the officers found this old money, they searched the remainder of the room where the defendants had been sleeping and found all of the property taken from the Pie Company's safe, about one-half the money being found on the defendant White's person or in his possession and the other half in an overnight case belonging to the defendant York, and the .22 caliber pistol was discovered under the mattress on the bed where the defendants had been sleeping.

The defendant, Dorothy Mai York, testified that she and the defendant, Ophis Larry White, had registered at said Motel as man and wife and had remained there for some three days prior to their arrest. She admitted that she had been a prostitute and that for about two and one-half years she had been keeping company with the defendant White, that she knew his general reputa-

tion and knew that he was referred to as a safe burglar and a thief.

The defendant White admitted that he had been convicted and had served time in the State Penitentiary for burglary, but he denied committing burglary at any other time. However, he did admit the possession of burglary tools in Davidson County in May or June of 1961. He admitted that he had been out of employment for about one month before the trial of this case and that during the same period of time he had paid $900.00 to Bonding Companies to make bond for him upon criminal charges. He stated that he drew $60.00 per month for going to school under a Government sponsored bill for Ex-soldiers and that he drew $30.00 per month for a service connected disability, or a total of $90.00 per month, being all of his normal income.

When these defendants were arrested in the motel room all of the money exhibited on the trial of the case was found either in the possession of the defendant White or in an overnight bag belonging to the defendant York or lying loose on top of the dresser located in the room, and the pistol was found under the mattress of the bed on which the parties had been sleeping. When asked by the officers where the money had come from, the defendant White claimed that he had won it gambling. These defendants also told the officers that they had checked into the motel room on the morning of their arrest. However, they testified in Court that they had been staying in this particular motel for a period of several days, and were registered in the room as man and wife three days prior to their arrest.

During the course of the investigation by the detectives Burris and Lillie, they met a patrolman by the name of McWright and he advised them that he had found the safe taken from the restaurant, and then all three of these officers met at the McConnell Pie Company's place of business where McWright gave to his two fellow officers two pictures, one of them being of the defendant White and the other was a man by the name of Barnes, who incidentally had been sent to the penitentiary on the day before the trial of the case at bar. McWright stated to the officers that he had seen **White in that** vicinity; that is, the vicinity of the McConnell Pie Company on the night that it was burglarized. During the day these detectives received a call from Sergeant Smith asking them to meet him at the Motel where these defendants were apprehended.

The first eight Assignments of Error complain either that the evidence is insufficient upon which to base verdicts of guilty, or that the search conducted by the investigating and arresting officers was unlawful and, therefore, all evidence obtained as a result of such search should be suppressed.

■ It is a well settled rule that this Court will not reverse a criminal case on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused.

■ The verdict of the jury, approved by the Trial Judge, accredited the testimony of the witnesses for the State, and established their creditability. Such verdict also displaced the presumption of defendants' innocence, raised a presumption of their guilt, and put upon them here the burden of showing that the evidence preponder-

ates against the verdict and in favor of their innocence. *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385.

We think the recitation of the facts gathered from the record demonstrate that the evidence does not preponderate against the verdict of guilt and in favor of the innocence of the accused. It also demonstrates that the defendants have not displaced the presumption of their guilt and they have not carried the burden of showing that the preponderant evidence is against the verdict and in favor of their innocence.

Section 40-803 T.C.A. provides that an arrest may be made without a warrant in the following manner:

"An officer may, without a warrant, arrest a person:

\*       \*       \*       \*       \*       \*

"(2) When the person has committed a felony, though not in his presence.

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

In the case of *Jones v. State,* 161 Tenn. 370, 33 S.W.2d 59, the Court said:

"The substance of these provisions is that an officer may lawfully proceed to arrest without a warrant any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit a felony. It is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies. It is impossible to define 'reasonable cause' in terms to fit all cases arising. Each case must stand

on its own facts. A narrow construction would open the way for the escape of desperate criminals and the defeat of justice. One too liberal would lead to the harassment of the innocent. But the officer may not be required to wait for assurance, for evidence which would convict; when circumstances fairly point to a felony it is his duty to act, and act promptly.''

Generally it is held in this State that when the arrest is valid, then a search is permissible without a warrant provided such search is incidental to said arrest. *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009; *Van Pelt v. State,* 193 Tenn. 463, 246 S.W.2d 87.

In 47 American Jurisprudence, page 515 at Section 19, it is stated:

''It is fundamental that a search may be made without a warrant in connection with a lawful arrest, and that incriminating articles connected with the crime, as its fruits or the means by which it was committed, * * * found in the possession of the arrested person, may be seized. The authorities support the proposition that the search may extend beyond the prisoner's person. The essential factor is that the arrest be a lawful one.''

The law generally is:

An officer arresting a suspect on the afternoon of a robbery, with full justification for the arrest though without a warrant therefor, has the right to search him. *Barrett v. State,* 190 Tenn. 366, 229 S.W.2d 516, 18 A.L.R.2d 789.

The right to search, without a search warrant, the person of an accused, when legally arrested, has always

been recognized under English and American Law. *United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

■ The proof in this case shows beyond question that a felony had in fact been committed, that is that the business place of McConnell Pie Company had been burglarized, and that the arresting officers received information that the defendant White was in the vicinity of said business house at or near the time it was burglarized. The officer, Morgan Smith, received information that the defendant White committed the burglary and that he was then staying in the motel where he was subsequently arrested. Based upon the proof in this record this officer had reason to believe that a felony had in fact been committed. And he had reasonable cause for believing that the defendant White committed or participated in the commission of said felony. Therefore, under all of the authorities in Tennessee and elsewhere these officers had the right and the duty to arrest this defendant.

■ The question of the legality of the search is not involved in this case for the reason that one who is lawfully arrested may be searched in his person or the premises where he is arrested may be searched without a warrant provided such search is incidental to said arrest. Certainly the search conducted by these officers was incidental to the arrest in this case.

■ The plaintiffs-in-error contend that the entry into their room at the motel by force was without authority in law.

In 6 C.J.S. sec. 146, at page 615 on the general subject of "Arrest" it is stated:

"After due demand either a peace officer or a private person may, without a warrant, break open doors for the purpose of apprehending a felon * * *."

To the same effect is the case of *Smith v. Tate,* 143 Tenn. 268, 227 S.W. 1026, in which the Court cited with approval prior holding the Court in *McCaslin v. McCord,* 116 Tenn. 690, 94 S.W. 79:

"A sheriff in seeking to arrest one who has committed a felony, though he has no warrant for the arrest, can enter a house, breaking it open, if necessary, where he reasonably believes the felon then is, under Thomp.Shan. Code. sec. 6999, (now Section 40-807 T.C.A.) defining the powers of an officer to make arrests."

There can be no doubt, therefore, that these officers acted within reasonable bounds and in accordance with the law of this State in apprehending these two defendants.

It is contended on behalf of defendant York that the officers had no information to suspect her of any crime, therefore, the search of her overnight case was not valid. The only information they had through which the defendant York might have been connected with the crime was that the defendant White had been seen in the vicinity of the McConnell Pie Company on the night that it was burglarized driving an automobile belonging to the defendant York.

In the case of *Voss v. State,* 198 Tenn. 135, 138, 278 S.W.2d 667, 668 the Court speaking through Mr. Chief Justice Neil said:

"It further appears that at the time of the arrest a number of incriminating items were found in Voss' room. * * * In view of the incriminating articles found by the officers when they first entered the room, they would be fully justified in believing that the other occupants of the room were also implicated in the felony. This being true the arrest of Voss and the Jones' woman was lawful without a warrant. It is settled under all our decisions that an officer may make a search without a warrant as an incident to a lawful arrest. *Van Pelt v. State,* 193 Tenn. 463, and cases cited on page 472, 246 S.W.(2d) 87, on page 90 and also this right to search is not restricted to the person of a prisoner but to his immediate surroundings. *United States v. Rabinowitz,* 339 U.S. 56, 57, 70 S.Ct. 430, 94 L.Ed. 653, 655.''

The defendant York contends that there was no proof of the corpus delicti, that is the body of the crime, in so far as she was concerned.

In the case of *Humphrey et al. v. State,* 187 Tenn. 377, at page 381, 215 S.W.2d 791, at page 793 the Court stated:

" 'While holding (*Wilcox v. State,* 3 Heisk, [110,] 118, [50 Tenn. 110, 118]) that the recent possession of stolen property cannot correctly be said to afford plenary proof of the guilt of the prisoner, although unexplained, yet he says: "It creates a strong presumption of guilt.'' And the absence of explanation, if in the power of the party, must necessarily make evidence of guilty possession stronger. In fact, the recent possession of stolen articles under these circumstances, would not merely be a strong circumstance, but raise a presumption of guilt, upon which the jury should convict.' *Poe v. State,* 78 Tenn. 673, 679.''

Where there is no actual proof in this record of the participation by the defendant York in the commission of the crime of burglary, still there is ample proof, and fair inferences to be drawn from the proof, that the defendant York knew her codefendant and had been keeping company with him for a period of two or two and one-half years; she knew that he was generally referred to as a burglar and a thief; she knew that he was unemployed; she knew that he had a substantial amount of money on his person and since the currency was found under and co-mingled with some of her clothing in the overnight bag, the jury was justified in believing that she had knowingly received and concealed stolen property. However, the jury in assessing the punishment against her took into consideration her matters of defense, her general situation all in mitigation of the penalty that it would have probably otherwise imposed.

It is next insisted that the argument of the District Attorney General was improper and was of such a nature as to inflame the jury against these defendants, thereby depriving them of a fair trial.

The record reveals the prosecuting attorney was quite heated and vigorous in his final summation to the jury regarding the character and guilt of the defendant White, in particular. However, the record shows that the Trial Judge admonished him that he should not make improper remarks or improper argument and instructed the jury that such argument would not be considered.

Trial Judges in our State have a wide discretion in the matter of controlling argument of counsel and their action in restraining or refusing to check such argument

will not be reviewed unless it appears that this discretion has been abused. We believe the Trial Judge in this case exercised sound judicial discretion in controlling the argument of the prosecuting attorney. In addition to this reason for overruling this assignment of error the record discloses no objection to such argument on behalf of either defendant.

In the case of *Turner v. State,* 188 Tenn. 312, at page 324, 219 S.W.2d 188, at page 193, the Court quoted with approval the following:

" 'It is thoroughly settled, under our practice, that objectionable argument or improper remarks of counsel afford no ground for a new trial, where no objection is made or exception taken at the time of the argument. *Smith v. State,* 90 Tenn. 575, 18 S.W. 248; *King v. State,* 91 Tenn. 617, 20 S.W. 169; *Morgan v. Duffey,* 94 Tenn. 686, 30 S.W. 735; *Ferguson v. Moore,* 98 Tenn. 342, 39 S.W. 341.' *Sherman v. State,* 125 Tenn. 19, 47, 140 S.W. 209, 216.''

In addition to the foregoing reasons for overruling this assignment of error, it appears that the jury was not inflamed against these defendants as the verdict rendered by them shows they took into consideration that the remarks of counsel were made in the heat of debate and in his role as a vigorous advocate and proper allowance was made therefor by the jury in fixing the punishment of these defendants.

We have carefully considered all of the assignments of error and find them without merit. Therefore, they are overruled and the action of the Trial Court is in all things affirmed at the cost of the plaintiffs-in-error.