## TOM JIM ERVIN FLOYD, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. March 26, 1968.

Rehearing Denied April 30, 1968.

Certiorari Denied by Supreme Court Sept. 3, 1968.

Weldon B. White, Jr., Nashville, for plaintiff in error.

George F. McCanless, Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., Jack Norman, Sr., Sp. Counsel, James R. Omer, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below, Tom Jim Ervin Floyd, was convicted of murder in the first degree of one Richard Phillips and sentenced to twenty years and a day in the state penitentiary.

■■ The first question raised by the assignments is that the evidence preponderates against the verdict and in favor of the innocence of the defendant. In reviewing this assignment, we are guided by the principle that the verdict of the jury, when approved by the trial judge, accredits the testimony of the State and resolves all conflicts in favor of the State. Furthermore, the defendant is presumed guilty and has the burden of proving that the evidence preponderates in favor of his innocence and against his guilt. Hawkins v. State, Tenn., 417 S.W.2d 774; White v. State, 210 Tenn. 78, 356 S.W.2d 411.

The deceased, Richard Phillips, worked for a veterinarian's clinic and in after-hours with his wife operated a mixing bar and beer garden in Nashville. The defendant was a former employee who had been discharged.

The State's proof showed that on the evening of December 15, 1966, the deceased and some friends were having a party at his beer parlor when the defendant arrived. The defendant had been drinking, as had most of those present. The deceased told the defendant that he was not invited to the party, but, after some discussion, all went to the club part next door to gamble. In the dice game there, the defendant won for a while, then lost. An argument arose over his bet of $8.00 with one George Marshall, known as "Chocolate." The deceased insisted that the defendant pay this amount to Marshall, and they scuffled over it. Horace McHenry, one of the participants in the game, struck the defendant and put him out of the building. He fell against a car in the parking lot and said, "I'll get him. I told Richard (deceased) that I was sorry, but I'll get him." This was at

about 2:00 A.M. on December 16, 1966.

The defendant, Horace McHenry, Clyde Woodruff and George Marshall went to Marshall's house, where they continued to drink until 3:00 or 4:00 A.M. The defendant brought a radio from his home and either sold or pawned it to Marshall for $10.00. He paid Marshall the $8.00 which had been in controversy earlier. He had other money, and then went to a pawn shop, where he redeemed his shotgun and bought a box of shells. He carried the gun with him on several occasions during the day.

In the meantime, the deceased had worked at his regular job until noon and returned to his mixing bar. He went to sleep in a chair near a heater, after telling one of his friends to let him know if a customer came. He had a pistol in a pocket.

At about 4:30 P.M., Horace McHenry entered the club and the defendant followed, still carrying his gun. He also had six shells. The defendant said, "Where's Phillips?" He then walked to the chair in which deceased was sleeping and kicked him on the foot to awake him. The defendant backed up with his shotgun, pointed at the deceased and said, "Get up and come on out here. I want to talk to you." The deceased had both hands raised and said, "All right." He took three steps toward the defendant in compliance with his order, at which time the defendant shot him in the right side. The defendant began to reload his gun, but Horace McHenry had obtained a shotgun from behind a counter and threatened to shoot the defendant if he fired again. After being shot, the deceased tried to reach his own pistol and said, "Don't shoot me no more." The defendant

replied, "I told you I was going to get you." The deceased was taken to the hospital and died that afternoon.

The defendant testified that in the argument at the dice game the deceased struck him two severe blows; that the deceased had a cocked pistol and threatened to kill the defendant; that he lost his billfold; that he returned at about 8:00 A.M. and found his billfold, but $75.00 or $80.00 was missing.

The defendant says he came back with his shotgun to tell the deceased that he had paid the eight-dollar gambling loss; that he wanted to know about the money taken from him and to know why the deceased whipped him the night before. He says he did not go in a peaceful manner.

The defendant says that when he arrived there the deceased saw his shotgun; that the deceased got a gun and shot at Horace McHenry; he also says that the deceased took a step, stepped back, hit his pocket and was coming out with his pistol; that the defendant hesitated and then shot; that he was not intending to shoot him, other than in the arm.

King Cothron testified that the deceased, when shot, had his hand in his pocket and took two steps toward the door entered by the defendant.

The defendant's claim of self-defense is not available. The real or apparent necessity to take life which is brought about by the design, fault or contrivance of the defendant is no excuse. Rogers v. State, 95 Tenn. 448, 33 S.W. 563.

The defendant relies on Gray v. State, 203

Tenn. 332, 313 S.W.2d 246. The fact that one leaves the scene of trouble, goes away and arms himself, returns to the scene of the first trouble and makes no effort whatever to molest the other party does not deprive him of the right of self-defense in all cases. In the present case, the defendant armed himself with a shotgun and deliberately returned to the scene of the difficulty. From the proof here, the jury was justified in finding the existence of a deliberate, premeditated intention to take life, and that the defendant was guilty of murder in the first degree. Their verdict is supported by the facts of the case. Consequently, the first assignment is overruled. Clark v. State, 27 Tenn. 671.

The defendant's next assignment of error asserts that the trial court erred in denying his motion for a new trial on the ground that a confession given by him to an officer was obtained in violation of his constitutional rights.

The defendant made a statement, generally exculpatory in nature, to Detective Bailey, of the Nashville Police Department, at the police station about 7:30 P.M. after the homicide. Mr. Bailey testified that he read from a card the constitutional rights of the defendant and fully warned him of those rights. The defendant replied that he had nothing to hide and would give a statement. The written waiver is as follows:

*"WARNING*

BEFORE YOU ARE ASKED ANY QUESTIONS YOU MUST UNDERSTAND YOUR RIGHTS.

(A) YOU HAVE THE RIGHT TO REMAIN SILENT.

(B) ANYTHING YOU SAY CAN BE USED AGAINST YOU IN COURT.

(C) YOU HAVE THE RIGHT TO TALK TO A LAWYER FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS AND TO HAVE HIM WITH YOU DURING QUESTIONING.

(D) YOU HAVE THE SAME RIGHT TO THE ADVICE AND PRESENCE OF A LAWYER EVEN IF YOU CANNOT AFFORD TO HIRE ONE. WE HAVE NO WAY OF FURNISHING YOU A LAWYER BUT ONE WILL BE APPOINTED FOR YOU, IF YOU WISH, IF AND WHEN YOU GO TO COURT.

(E) IF YOU DECIDE TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU WILL STILL HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME UNTIL YOU TALK TO A LAWYER.

### *WAIVER*

I HAVE READ THIS STATEMENT OF MY RIGHTS AND I UNDERSTAND WHAT MY RIGHTS ARE. I AM WILLING TO MAKE A STATEMENT AND ANSWER QUESTIONS. I DO NOT WANT A LAWYER. I UNDERSTAND AND KNOW WHAT I AM DOING. NO PROMISES OR THREATS HAVE BEEN MADE TO ME AND NO PRESSURE OR COERCION OF ANY KIND HAS BEEN USED AGAINST ME."

The defendant was represented by retained counsel at his trial. The record shows that at his arraignment on February 15, 1967, following the indictment of Febru-

ary 3, 1967, he was represented by two employed attorneys.

A copy of the statement was given his retained counsel prior to the trial, and no question or objection was made to its introduction. During the entire trial, no question was raised as to its admissibility. The defendant cross-examined the detective on its contents, but he did not object to its introduction into evidence. On direct examination by his counsel, the defendant testified:

"Q. Did you make a statement that you didn't have anything to hide?

A. That's true.

Q. Did you make this exact statement right here, which has been put in evidence?

A. That's true."

The defendant and his retained counsel obviously thought that his written statement supported his theory of self-defense and wanted it read to the jury. His testimony agrees with the statement.

There was no motion to strike the statement during the trial, and the question of its admissibility was first brought to the trial court's attention in the motion for a new trial.

The defendant does not claim that his statement was other than voluntarily made without threats or promise of reward. He was advised of his rights, including his right to counsel, and he did obtain private counsel. His testimony does not dispute his statement in any respect. The record does not show that the defendant was indigent before his present appeal to this court.

It is apparent that the defendant's trial strategy was to permit this statement to go to the jury without objection.

■ ■ Objections to evidence must be timely made or they are waived and cannot be raised for the first time on appeal. Harless v. State, 189 Tenn. 419, 225 S.W. 2d 258. By immediately apprising the trial judge of an objection to a statement, counsel gives the court the opportunity to conduct the trial without using the evidence in question. If the objection is well taken, the statement may be excluded from jury consideration and a reversal and new trial avoided.

We think there is no merit in this assignment, and it is overruled.

The judgment of the trial court is affirmed.

We commend Weldon B. White, Jr., of the Nashville Bar, who has ably briefed and presented this appeal in oral argument by appointment of this court.

OLIVER and GILLIAM, JJ., concur.

## ON PETITION TO REHEAR

WALKER, Presiding Judge.

The plaintiff in error, Tom Jim Ervin Floyd, has filed an able and earnest petition to rehear as a result of our opinion filed March 26, 1968.

This petition points out no material fact overlooked, nor cites any new authority or argument not considered by this court in its original opinion. We have again examined the matter and are fully satisfied plaintiff in error

has received a fair trial and in such trial none of his constitutional rights were violated. Under Rule 32 of this court, the petition to rehear is denied.

OLIVER and GILLIAM, JJ., concur.