IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 1, 2003 Session

## STATE OF TENNESSEE v. EUEL FRANKLIN LOCKHART

**Appeal from the Circuit Court for Carroll County**
**No. 1894    C. Creed McGinley, Judge**

---

**No. W2002-02021-CCA-R3-CD  - Filed July 11, 2003**

---

The defendant, Euel Franklin Lockhart, pled guilty to possession of less than .5 grams of methamphetamine with the intent to distribute, a Class C felony. See Tenn. Code Ann. § 39-17-417. Pursuant to Tennessee Rule of Criminal Procedure 37, the defendant reserved as a certified question of law the issue of whether the trial court erred by denying his motion to suppress. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Terry J. Leonard, Camden, Tennessee, for the appellant, Euel Franklin Lockhart.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 5, 2002, officers arrived at the defendant's residence with a warrant for his arrest. After knocking on the back door and announcing their identity, they entered the residence and found the defendant in the living room. While conducting a search incident to the arrest, the officers found thirteen bags of white powder that tested positive for methamphetamine. The defendant was indicted for possession of less than .5 grams of methamphetamine with intent to manufacture, deliver, or sell and moved to suppress the illegal drug evidence, arguing that the officers did not have consent to enter and that there were no exigent circumstances warranting entry. The trial court denied the motion, finding that there was no constitutional violation. The defendant pleaded guilty to the charge and received a three-year sentence, with supervised probation after service of 240 days in jail. Pursuant to Tennessee Rule of Criminal Procedure 37(c), he reserved the following certified question of law for this court:

Whether the Carroll County Sheriff's Department violated the Defendant's constitutional rights on February 5, 2002, when they entered the defendant's residence[,] without a search warrant and without the consent of the Defendant[,] for the purposes of executing a misdemeanor violation of community corrections warrant . . . .

At the suppression hearing, Carroll County Sheriff's Deputy Webster L. Bates testified that he had a warrant for the defendant's arrest which was issued due to a violation of the terms of a community corrections sentence. Accompanied by Sergeant Richard Crossnoe, he arrived at the defendant's residence at approximately 5:30 p.m. After knocking on the door and saying, "Sheriff's Department," Deputy Bates heard no response, opened the unlocked door, and stepped into a laundry room. He testified that he and Sergeant Crossnoe then knocked on the interior door and once again identified themselves. When they heard someone say, "Yeah," Deputy Bates and Sergeant Crossnoe walked into the living room and found the defendant watching television. The defendant's wife was asleep on the couch. Deputy Bates recalled that after informing the defendant of the warrant and handcuffing him, he and Sergeant Crossnoe found in his possession a "large plastic bag with numerous other white bags with individually wrapped powder inside of it." Deputy Bates acknowledged that he did not have a search warrant for the residence and that he had not seen the defendant in the residence before entry. He conceded that he was not in "hot" pursuit of the defendant. No other witnesses testified.

The trial court denied the motion, ruling that the officer was there to execute a valid arrest warrant and properly did so. On appeal, the defendant argues that the entry into his residence was unconstitutional because the officers did not have his consent, had not been refused entry, see Tenn. Code Ann. § 40-7-107 ("To make an arrest, . . . the officer may break open any . . . door . . . of a dwelling house if, after notice . . . the officer is refused admittance."), and did not have a search warrant. The state asserts that the officers properly executed the arrest warrant and that the search was properly conducted incident thereto.

The standard of review applicable to suppression issues is well established. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23.

Initially, the defendant does not argue in this appeal any particular constitutional violation, state or federal. His primary argument is grounded upon Tennessee Code Annotated section 40-7-107, a statutory provision that is not specifically included in the question certified by the trial court.

It is, of course, the defendant's duty to support the issues he has raised with appropriate argument and citation to authority. See Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). Otherwise, the issue is waived. Nevertheless, the defendant is not entitled to relief in this case.

In support of his position, the defendant cites State v. Clark, 844 S.W.2d 597 (Tenn. 1992), and State v. Wilson, 990 S.W.2d 726 (Tenn. Crim. App. 1998). Although both of those cases involved arrests in private residences, they involved warrantless arrests and are, therefore, distinguishable on the facts. See Payton v. New York, 445 U.S. 573 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). Here, the officers had a valid warrant for the defendant's arrest for violating a community corrections sentence from a previous misdemeanor assault conviction. See, e.g., State v. Duer, 616 S.W.2d 614, 615 (Tenn. Crim. App. 1981) (arrest warrant required for misdemeanor offense not committed in officer's presence).

The defendant also cites Unites States v. Murrie, 534 F.2d 695 (6th Cir. 1976), for the proposition that the officers' entry into his residence was "unreasonable" within the meaning of the Fourth Amendment. In Murrie, officers went to the defendant's residence, a house with a single outside doorway that provided access to one apartment upstairs and one downstairs. They had a warrant for the arrest of the defendant's father. The defendant lived in the downstairs apartment; his father lived in the unit upstairs. The officers testified that they knocked on the outer door, which was locked, and shouted, "'[P]olice officers with arrest warrants, open up.'" Murrie, 534 F.2d at 696. When the officers received no response, they kicked in the door and found the defendant and another man in the ground floor apartment with the door open. When the defendant identified himself as "Tommie Murrie," which was also his father's name, officers arrested him and, while searching the immediate area of the arrest, found a loaded automatic pistol. The defendant admitted ownership of the pistol and was subsequently convicted for possessing a weapon after having been convicted of a felony. Other officers, who had gone to the upstairs apartment, found the defendant's father and discovered that he was the man for whom the arrest warrant had been issued. On appeal, the Sixth Circuit Court of Appeals held that the trial court had erred by failing to shift the burden of proof to the government and remanded the cause for further consideration of the motion to suppress.

In Murrie, the officers had forcibly entered the outer door of the defendant's dwelling pursuant to a federal statute that established the following conditions for forcible entry to execute either a search or arrest warrant: (1) announcement of authority; (2) announcement of purpose; and (3) grounds for believing entry has been refused. Id. at 698. In dicta, the Sixth Circuit observed that "[e]ven if police officers possess a wholly lawful warrant for arrest or search, we believe the sudden, unannounced breaking open of a dwelling, particularly in the nighttime, may not only violate the [applicable] statutory terms . . . but also the 'unreasonable' search standard of the Fourth Amendment." Id. It is this language upon which the defendant relies in this case.

Here, Deputy Bates and Sergeant Crossnoe entered the defendant's residence pursuant to Tennessee Code Annotated section 40-7-107, which governs the authority of police officers to break into a residence in order to effectuate an arrest. The statute provides as follows:

> To make an arrest, either with or without a warrant, the officer may break open any outer or inner door or window of a dwelling house if, after notice of the officer's office, authority and purpose, the officer is refused admittance.

Tenn. Code Ann. § 40-7-107. Before an officer may make a forced entry into a residence, he must give notice of his "office, authority and purpose." Id. Our supreme court has previously determined the statute does not violate the Fourth Amendment of the United States Constitution. Smith v. Tate, 143 Tenn. 268, 227 S.W. 1026 (1920).

In State v. Jeffrey K. Shaw, No. M2001-00563-CCA-R3-CD (Tenn. Crim. App., at Nashville, Jan. 9, 2002), the defendant was arrested in the residence of a third party pursuant to outstanding warrants for probation violation and a weapons charge. On appeal, this court affirmed the trial court's denial of the defendant's motion to suppress, describing the circumstances of the arrest as follows:

> Detective Arendall then proceeded to the address given by the suspect and knocked on the door. A man asked the Detective to identify himself before opening the door, and the Detective asked the man if he had the correct address. The Detective requested that the man behind the door open it so the Detective could determine if he was at the correct address. When the man opened the door, the Detective could see the [d]efendant sitting on a sofa in the living room. The man at the door then stepped back, and the police entered and arrested the [d]efendant. Incident to the arrest, the police discovered a loaded .38 revolver under the sofa cushion on which the [d]efendant was sitting. During the arrest, the [d]efendant informed the police that the gun belonged to him and that the counterfeit ticket scheme was his idea.

Jeffrey K. Shaw, slip op. at 2. This court held that because officers had a warrant to arrest the defendant and reason to believe that he was in the residence, the arrest was proper. Id. at 3 – 4.

In White v. State, 210 Tenn. 78, 356 S.W.2d 411 (1962), our supreme court affirmed a conviction based on an arrest occurring under similar circumstances. The arresting officers, who had a warrant for the defendant's arrest in connection with a burglary, broke into his motel room:

> While they were investigating the burglary at the McConnell Pie Company one of these detectives received word from Sergeant Smith of the Nashville Police Department . . . that the defendant White was at a [m]otel on Dickerson Road in Davidson County, Tennessee. All of these officers went directly to the [m]otel where they met and waited while Sergeant Smith knocked on the door of the cabin where

the defendants were and informed them that he was Sergeant Morgan Smith of the Nashville Police Department, and requested them to open the door. Upon their failure to do so within a reasonable time, the Sergeant kicked the door open and entered the room.

356 S.W.2d at 413. In rejecting the defendant's challenge to the arrest, our high court, quoting 6 C.J.S. § 146, at page 615, on the general subject of 'Arrest,' ruled that upon "'due demand either a peace officer or a private person may . . . break open doors for the purpose of apprehending a felon.'" Id. at 416.

In our view, the evidence in this case does not preponderate against the trial court's finding that the officers acted within reasonable bounds and in accordance with the law. See White, 365 S.W.2d at 416. After knocking on the back door, identifying themselves, and receiving no response, the officers, who had seen vehicles parked outside the residence, opened the back door and heard a television. Id. at 413. When they announced themselves a second time, they heard the affirmative reply, "Yeah." In our view, the defendant's reply could reasonably have been construed as consent to the officers' presence. Nevertheless, had the officers been denied entry, they could have lawfully broken into the residence in order to make the arrest. See Tenn. Code Ann. § 40-7-107. That it was unnecessary to do so does not make a difference.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE