JIMMY S. MAY and PAUL R. MAY, Plaintiffs in
Error, v. STATE OF TENNESSEE, Defendant
in Error.—474 S.W.2d 172.

July 16, 1971.

Certiorari Denied by Supreme Court December 6, 1971.

Karl Bishop and A. H. Wenz, Nashville, for plaintiffs in error.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, O'Brien Price, District Attorney General, Springfield, for defendant in error.

MITCHELL, J.  Jimmy S. May and Paul R. May who will be referred to as the defendants or by name, were tried and convicted of Grand Larceny of an automobile on October 1, 1970, in the Circuit Court of Robertson County, Tennessee. The trial jury fixed the punishment of each of the defendants at three years confinement in the State penitentiary upon which the Trial Judge Honorable Thomas Boyers pronounced judgment and sentence. After the defendants' motions for a new trial and in arrest of judgment were heard and overruled they appealed and assigned errors.

The facts of the case which were evidently accepted by the trial jury and the court are summarized as follows:

On or about March 20 and 21, 1970, a green 1968 model Chevrolet Camaro automobile license number JL 6032, serial number 124378N4113896 of the value of $1800.00 was stolen from the place where it was parked in front of the house of the owner Donald Monday at 534 South Fifth Street, Nashville, Tennessee. Mr. Monday reported the loss to the police. Later the same day Mr. Monday saw his stolen automobile at Holt's Garage in Springfield, Tennessee. It had been stripped of all the parts, engine, transmission, hubcaps, all the lugs except one on each wheel, the tachometer and instrument panel also were gone. The engine was lying on the back of a wrecker

in the garage. Some of the parts were in a box in Holt's Garage in Robertson County, Tennessee.

The owner had parked this car in front of his house about seven or eight o'clock on March 20 and the next morning when he got up he discovered it was gone.

On the night of March 20-21, 1970, Richard Sutton the Sheriff of Sumner County had received information that there would be automobiles stripped in the White House area. He had, with other officers of Sumner and Robertson Counties organized a patrol and was on the look-out for this kind of activity. He had gone over into Robertson County and was on his way back when he met three cars together almost bumper to bumper. There was a 1968 Plymouth GTX, a 1956 Chevrolet, and a 1968 Camaro.

The Sheriff turned and followed these cars and came back into Robertson County. It was 1:30 or 2:00 A. M. These cars were about 4 miles into Robertson County and stopped at the Kimble residence where there was an outside light and an attached garage facing the highway. He could see the Plymouth and the Camaro under the light. He went back to White House and radioed the Springfield Police to contact their Sheriff. The Sheriff of Robertson County and his officers joined the Sheriff of Sumner County so that an officer from each county would be with those who formed the patrol. At the break of day Sheriff Sutton and his companions heard a noise and saw two automobiles coming down the road. The back car had its lights on and was pushing the front car. These were the same vehicles the Sheriff had observed earlier in the night. Other patrols were sta-

tioned at strategic points in the area. The Sheriff was on what is known as the Distillery Road near the Kimble house. One of the defendants was riding in the '56 Chevrolet, the motor was missing from it and the other defendant was riding in the GTX car with another man. The GTX was pushing the Chevrolet. They were taken into custody and advised of their rights and were taken to the Robertson County jail. Sheriff Richard Sutton of Sumner County and Sheriff Alley of Robertson County then went to the Kimble house where they found a 1968 Camaro automobile stripped in the garage. The engine, transmission and smaller items had been taken from this automobile in the garage. This automobile was a 1968 Camaro license No. JL 6032. This was in Robertson County, Tennessee. The defendants were not drunk but had been drinking.

The defendants Paul and Jim May after being fully advised of their rights under the Miranda Rule confessed their guilt of participating in the taking of the stolen automobiles in question from Nashville to Robertson County and participated in stripping the parts from the Camaro. They were not drunk, but were probably drinking.

The defendants did not testify in their own behalf in the presence of the jury. They did testify in the absence of the jury on the question of the admissibility of their confessions. The trial judge heard the matter in the absence of the jury and found that the defendants were not drunk at the time they gave their confession and ruled that the confessions were properly and lawfully obtained, overruled the defendants' objection and received the confessions in evidence.

The wives of the two defendants testified in their behalf that their husbands were good husbands and good fathers and that they worked and supported their families. That they do not drink very often. That they had never been in trouble before. Paul's wife testified that when he gets a little to drink he gets sleepy.

At the close of the State's proof the defendants made a motion for a directed verdict of not guilty, which was overruled.

The defendants have made the following assignments of error:

1. The evidence preponderates against the verdict and in favor of the innocence of the defendants.

2. The defendants were not furnished the names of witnesses present when the defendants made statements to the police officers as required by Section 40-2441, Tennessee Code Annotated.

3. The venue was Davidson County rather than Robertson County.

■ To the first assignment which challenges the sufficiency and legality of the evidence we say that it is settled law in this State that " 'the verdict of the jury, when approved by the Trial Judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused had the burden of showing that the evidence preponderates against the verdict

and in favor of his innocence.' See White v. State, [210 Tenn. 78, 356 S.W.2d 411 (1962)]."

"It is a well settled rule in this State a conviction in a criminal case will not be reversed on the facts unless it is shown by the defendant the evidence preponderates against the verdict and in favor of his innocence. White v. State, [*supra*]; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173 (1963).

\* \* \* \* \* \*

"This Court, in reviewing the record on appeal from a conviction, is bound by the rule, 'that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court.' Holt v. State, [210 Tenn. 188, 357 S.W.2d 571]; McBee v. State, *supra*." Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648.

By their second assignment of error the defendants contend the State did not furnish the names of witnesses who were present when the defendants made statements to police officers, as required by T.C.A. 40-2441.

When the case was called for trial the State announced ready and the defendants' counsel announced, "we are ready, Your Honor." The court then proceeded to select a jury and when eleven jurors had been selected and seated the court directed the sworn officers to take the jurors for the noon recess and at one o'clock they returned to the jury box. At that time counsel for the defendant stated to the court that before they finished selection of the jury he moved the court to require the

Attorney General to give him the names of any witnesses he planned to use that would testify to any written or oral statements made by either of the defendants and the names of those present at the time the statements were made, if any.

The Attorney General stated he had no written statements but he had some verbal statements as soon as Mr. Whitehurst arrived, and then Whitehurst would give him the names of those present. The Court said, "all right" defendants' counsel said he would like to know what was supposed to have been said, the court said, "all right."

The twelfth juror and an alternate juror were selected then the Attorney General suggested they dispose of the defendant's motion. The jury was excused from the courtroom. The Attorney General stated to the court that he had no written statements that the two officers Mr. Bill Whitehurst of the T.B.I. and Sheriff Richard Sutton heard certain admissions by the defendants. That Whitehurst had not testified in a previous trial of this case and defense counsel was at liberty to question Mr. Whitehurst who has his own notes on the matter, that he was not going to introduce any statements or confessions by Sheriff Sutton. The Court stated the defense counsel was entitled to know what Mr. Whitehurst was going to say, took a recess and told defense counsel he could take Mr. Whitehurst back there and ask him about it. A recess was taken while defense counsel and Mr. Whitehurst talked. Then the jury was brought in and the trial commenced. The indictment was read to the court and jury. Defense counsel entered a plea of

not guilty for the defendants, and the taking of testimony began.

There was no motion by the defendants' counsel for a further recess or further delay or continuance. The Attorney General did not introduce any admissions or confessions of the defendants in his examination of Sheriff Sutton, but defense counsel in cross-examination of Sheriff Sutton asked, "you were not there so how would you know?" To which the Sheriff answered, "They told me they were there. They told me who was in the garage. stripping cars." Defense counsel made a motion for a mistrial which was overruled to which he excepted.

We do not think defendants can effectively complain about this answer of the Sheriff because it was brought about by the inquiry of defense counsel and was responsive to the question.

In response to the request of Defense Counsel the District Attorney gave him the name of T.B.I. Agent William Whitehurst and told him that Mr. Whitehurst could tell him who was present when the oral statement was made and that there was no written statement.

There had been a previous trial of this case at which Sheriff Sutton testified and at which Agent Whitehurst was present, and there is nothing to show the demand was made prior to the date of the trial. The Court recessed and allowed the defense counsel to confer with Agent Whitehurst and defense counsel then returned, gave no indication his talk with Mr. Whitehurst was not satisfactory and resumed the trial without objection, complaint or request for further delay.

When the District Attorney called T.B.I. Agent William Whitehurst the defense counsel told the court he had a motion. The court ordered the jury removed from the courtroom and in the absence of the jury the defense counsel told the court he desired to put the defendants on the witness stand to tell the court the circumstances surrounding their talking to Mr. Whitehurst.

The defendants were sworn and the defendant Jimmy May was introduced. When his lawyer asked him if he talked to Mr. Whitehurst of the T.B.I. the morning of March 21, 1970 he answered, "I don't remember, I talked to so many." That he assumed it was that morning that he didn't have a watch, he said. "he wasn't feeling too good that morning" that they had been drinking until they were picked up the next morning. That they drank a pint of Tequila and almost two pints of whiskey and two cartons of beer.

He was asked if he talked to Bill Whitehurst, he answered "yes, sir, well, I wouldn't say for sure it was him, but I talked to three or four of them up there that morning." "They asked me some questions but what they were I don't remember."

On cross examination, the District Attorney asked, "are you telling us that you were so drunk that you didn't know what you were doing and you helped strip two automobiles at the Kimble residence?" He answered, "I don't know if I was that drunk or not."

Paul May testified in the absence of the jury. When asked if he recalled talking to Officer Whitehurst, he answered "there was about ten or twelve running in

and out." That they carried him to jail, had handcuffs on him, put him in a cell for 30 or 40 minutes then carried him out front. That there was a whole bunch of people asking him questions, but he did not know who all was talking. That he had been drinking quite a bit. That he did not know what he did that night. That he woke up in the drunk tank.

Then in the absence of the jury the District Attorney put Mr. William Whitehurst on the stand who testified that he talked to the two defendants about nine-thirty that morning, he did not observe the odor of alcohol about them. That each one of them talked very coherent. That he advised them of their rights, told them who he was, and why they were being held in jail.

The following dialogue took place between the District Attorney, the court, and the defense counsel:

"MR. PRICE: Now, Your Honor, do you want me to go into what they said outside the hearing of the jury.

THE COURT: Well, as I understand it your objection is based on the fact that they were intoxicated and didn't know what they were saying.

MR. BISHOP: Yes, sir.

THE COURT: Well, I'll overrule your objection. I don't see any need of going through this twice. Bring the jury in."

The jury returned to the courtroom and T.B.I. Agent William Whitehurst testified he warned the defend-

ants under the Miranda rule and that they told him that they participated in the taking of the automobile in question along with other automobiles from Nashville to Robertson County and stripping them the nights of March 20-21, 1970. The defendants made no other objection to the testimony of Agent Whitehurst. They did not object to his testimony on the ground that T.C.A. 40-2441 had not been complied with but defense counsel cross examined Agent Whitehurst about the number of people he had interviewed in this case and about the investigations he had made of the defendants. That he did not get any written statement from the defendants, and that he found the defendants had no criminal record that they were clean. That they could have been drinking, the eyes of one were red, that he couldn't say they were drunk when he talked to them.

■ ■ We are of the opinion that the assignment of error number 2 based on failure to comply with T.C.A. 40-2441 cannot be considered by us on this review because of the failure of the defendants to specifically object to the testimony of William Whitehurst on this ground. Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385; Turner v. State, 188 Tenn. 312, 219 S.W.2d 188. Further, under the facts and circumstances developed we find there was a substantial compliance with the mandate of the statute.

At the close of the State's case the defendants made a motion for a directed verdict of not guilty which was overruled but did not renew it at the close of all the proof, and did not make any assignment of error on that question.

In his argument on the motion for a directed verdict at the close of the State's proof the defendant's counsel based his contention wholly on the question of venue insisting that the venue was in Davidson County and not in Robertson County. That there was no proof that the defendant stole the automobile in Robertson County.

He made no contention of the failure to comply with T.C.A. 40-2441, with reference to giving the defendants the statements made to Agent Whitehurst and the names of those present, in his argument on the motion for a directed verdict.

■ The defendants complain that their confessions were erroneously admitted and received in evidence in violation of their constitutional rights because they were drunk and not in a condition to know what they were doing.

The trial judge investigated this matter in the absence of the jury and found the facts against the defendants' contention. That the confessions were properly obtained and were admissible in evidence. The finding of the trial judge is conclusive unless we find the evidence preponderates against it, and we find that it does not. State ex rel. George v. Johnson, 217 Tenn. 1, 394 S.W.2d 641; Cusick v. State, 456 S. W.2d 857.

■ By assignment 3 the defendants contend the venue was Davidson County rather than Robertson County, T.C.A. 40-108 provides:

"Where property is stolen in one county and brought into another the jurisdiction is in either county."

It was said in John Henry v. State, 47 Tenn. 331 that:

"It is a principle of the common law, that if goods be stolen in one county and carried by the thief into another county he may be indicted for the larceny in either county. This rule of the common law has always been recognized by the courts of this state, and is sanctioned by legislative enactment." 86 Tenn. 262.

In State v. Margerum and Seymour, 68 Tenn. 362 the prisoners were in custody of the sheriff being removed from Madison County to Shelby County. While in Fayette County enroute they stole a watch and chain. Which they carried into Shelby County. They were tried and convicted in Shelby County and the judgment was affirmed over the prisoners' insistence that the venue was in Fayette County.

The assignments of error are overruled and the judgment of the trial court is affirmed.

Russell and Dwyer, JJ., concur.