**STATE of Tennessee, Appellee,**

v.

**Ralph Dewayne BROCK, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 17, 1984.

Permission to Appeal Denied by Supreme Court Oct. 9, 1984.

Nat H. Thomas, Ward Huddleston, Jr., Kingsport, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, H. Greeley Wells, Stanley A. Kweller, Asst. Dist. Attys. Gen., Blountville, for appellee.

## OPINION

DWYER, Judge.

The appellant was convicted by a jury for committing the offense of murder in the first degree, with punishment fixed at life imprisonment. The issues on this appeal as of right are:

1. Whether the evidence is sufficient to sustain the jury's guilty verdict.

2. Whether the trial court erred in admitting into evidence a photograph depicting a portion of the deceased's leg.

3. Whether the district attorney general's closing argument was improper.

4. Whether the trial court erred in denying the appellant's motion for a new trial based upon allegations of newly discovered evidence.

5. Whether the trial court erred in permitting the State to cross-examine co-defendant Curtis Hart concerning an out-of-court statement made by co-defendant Charles Massengill.

6. Whether the trial court erred in permitting the State to cross-examine the appellant concerning an out-of-court statement made by co-defendant Curtis Hart.

The first issue: The State's proof showed that during the late evening and early morning hours of November 22 and 23, 1982, James Beverly was murdered in his apartment located at 809 Seventh Street in Bristol, Tennessee. When police officers entered his apartment in the Avalon Townhouse Apartments, the decedent's nude body was found bound hand and foot and lying on the floor. His head was suspended some twelve inches from the floor by a white nylon rope that was around his neck and secured to a doorknob.

A physician testified for the State that he was summoned to examine the victim at approximately 3:30 p.m. on November 23, 1982. He estimated that the decedent had been dead for twelve to fifteen hours. The victim had a stab wound on his neck, a swollen and discolored nose, and numerous scratches, abrasions and bruises on his head and face. The decedent had been beaten with such severity that fragments of bone marrow from the bony structure of his face had entered his bloodstream, lodging in his lungs. The doctor opined that the victim was unconscious from the beating when he was tied to the doorknob. The victim's blood supply was cut off due to his head being suspended by the rope, resulting in death by ligature strangulation.

Belinda Leonard, a neighbor of the victim, testified that between 5:00 p.m. and 6:00 p.m. on November 22, 1982, she saw co-defendant Curtis Hart come out of the victim's apartment, closing the door behind him. She noticed that a small red sports

car was parked outside the apartment at this time.

James Mark McCord, who lived next door to the victim, testified that he heard a loud rumbling noise coming from the victim's apartment shortly after midnight on November 22, 1982. Ten minutes later, he looked outside and saw a big car leaving the apartment complex.

Mark Edward Hicks, a resident of the Avalon Townhouse Apartments, testified that at about 11:30 p.m. on the night of the murder, he saw two men walking from the opposite side of the building where the decedent lived. They got into a big Buick automobile. When shown a photograph of the appellant's car, Hicks testified that it looked like the same type of car.

Another neighbor of the victim, Bonnie Ann Day, testified that between 5:30 p.m. and 6:00 p.m. on November 22, 1982, she saw co-defendant Charles Massengill driving a small red car away from the apartments. Around 6:00 p.m. she saw Massengill walk around from the other side of the victim's apartment. At midnight, the witness saw the appellant and another man driving up in a car which she identified as the appellant's. Instead of going in the front door, the men went around the apartment building. The witness then saw them return to the car carrying some "stuff". They placed the objects in the back seat and drove around to the side of the apartments where one of the men got out of appellant's car and got into a small dark car.

The State's proof showed that the following items were missing from the victim's apartment after the murder: a telephone answering device, a video cassette recorder, a microwave oven, a portable color television and a black leather jacket. The victim's car, a black Datsun 280ZX, was also stolen and later recovered from a lake in Virginia. Appellant admitted in his testimony that these articles were in his possession on the early morning hours of November 23, 1982.

A girlfriend of the appellant, Joy Elaine Wagoner, testified that the appellant came to visit her in Georgia on the Tuesday after Thanksgiving of 1982. The State introduced a photograph which was taken of her and the appellant during that visit. It shows appellant wearing a black leather jacket comparable to the one owned by the decedent. The police contacted Wagoner on Thursday and questioned her regarding the appellant's whereabouts. After Wagoner told the appellant that the police had called, appellant showed her a pair of gloves and a folding knife, both of which had blood on them. Appellant told her that he was going to use them to turn State's evidence against another guy. He also said that he left Tennessee because one of his roommates was being sought in connection with a murder. Wagoner related that appellant had a black leather jacket and a pair of black leather pants in his possession.

Karen Williamson, a girlfriend of the appellant, testified for the defense that appellant was at home in his apartment on November 22, 1982, during the time period in which the murder was committed.

Co-defendant Curtis Hart testified that he and a friend robbed and killed the victim, James Beverly. Hart denied that appellant was involved in the murder although he related that appellant did purchase some of the victim's stolen goods. The State introduced a prior statement given by Hart to a T.B.I. agent in which Hart implicated himself, Charles Massengill and the appellant in the slaying. Hart admitted making the statement but said that he incriminated the appellant in order to get back at him for kicking him out of his apartment.

The appellant testified that during November of 1982 he had allowed Curtis Hart to live with him and his girlfriend, Karen Williamson. Hart and Charles Massengill left his apartment on the evening of November 22 to get a drink. Appellant stayed in the apartment with Karen until about 3:30 a.m., when he was awakened by Hart and Massengill. They sold him a video cassette recorder, a microwave oven and a telephone answering machine for six-

ty dollars. Massengill also gave appellant three leather coats. At Hart's request, the appellant followed the men in his car when they took the decedent's car to dispose of it. Upon their return to the appellant's apartment, Hart told him that they had to "snuff a queer." Appellant ordered the pair from his apartment the following morning. After learning that the police were searching for Hart and Massengill, appellant left town and drove to Chattanooga, where he sold some of the victim's stolen property. He then visited Joy Wagoner in Georgia. While he was there, he discovered a pair of gloves and a knife inside one of the leather jackets. He later disposed of them while in South Carolina. Appellant then returned to Georgia, where he was apprehended by the police.

■ It is well-settled that the verdict of the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in favor of the theory of the State. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). The State is entitled on appeal to the strongest legitimate view of the evidence. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978). The State presented testimony from Bonnie Ann Day, who identified the appellant as one of the men she observed carrying "stuff" from the victim's apartment at the time of the murder. There was proof that the appellant's automobile was used to transport the stolen articles from the decedent's apartment to the appellant's apartment. The appellant was in possession of the victim's property on the day of the murder. The proof showed that appellant assisted in disposing of the victim's car and that he was in possession of a bloody pair of gloves and a bloody knife which he later threw away when he learned that the police were searching for him. From this evidence, any rational trier of fact would be convinced of appellant's guilt beyond a reasonable doubt. T.R.A.P. 13(e). This issue is overruled.

■ The second issue: A photograph was introduced which showed a portion of the decedent's leg. We have viewed the photograph and do not find it to be gruesome or horrifying. It depicts the original position of the body in the living room. The bloodstains and fragments of glass visible in the picture are relevant to corroborate the medical testimony that the victim had been beaten and Hart's testimony that he struck the victim with a bottle. We find that the photograph was relevant and was not likely to inflame or prejudice the jury. This issue is overruled.

■ The third issue: During closing argument, the attorney general stated that "I could tell he was upset." Appellant objected to this as personal opinion; the trial court sustained the objection and instructed the jury to disregard the statement. In two other instances, the prosecutor used the words "I think." These last two statements, when read in the context of the attorney general's argument, do not appear to be expressions of personal opinion. We find that the argument could not have affected the verdict to the prejudice of the appellant. *Conboy v. State*, 2 Tenn.Cr. App. 535, 455 S.W.2d 605, 612 (1970). This issue is overruled.

■ The fourth issue: The affidavits in support of appellant's motion for a new trial based upon newly discovered evidence are not in the record; the issue has therefore not been preserved for appeal. *See Krause v. Taylor*, 583 S.W.2d 603 (Tenn. 1979); *Trotter v. State*, 508 S.W.2d 808 (Tenn.Cr.App.1974). This issue is overruled.

■ The fifth issue: Co-defendant Hart testified on redirect examination that he was mad at the appellant because he threw him out of his apartment. For this reason, he and his friend decided to implicate the appellant in the murder. Hart further related that before giving a statement to the police, he read a statement which co-defendant Massengill had given to the Bristol Police Department. On recross examination, the State asked Hart whether Massengill's statement was consistent with the one he gave. The appellant objected on the ground that the question exceeded the

scope of redirect examination, and the objection was overruled by the trial court. Appellant now argues on appeal that the attorney general's question was improper because it pertained to a collateral matter and deprived appellant of his right to confront Massengill. The trial judge cannot be put in error on grounds raised for the first time on appeal when the objection at trial was based on another ground which was declared insufficient. *Monteeth v. Caldwell*, 26 Tenn. 13 (1846); *Dotson v. State*, 2 Tenn.Cr.App. 388, 454 S.W.2d 174 (1970); T.R.A.P. 36(a). This issue is overruled.

The last issue concerns whether the trial court erred in allowing the State's attorney to cross-examine the appellant regarding the out-of-court statement of co-defendant Hart to the police. Appellant contends that the cross-examination pertained to a collateral matter and that he was denied the right of confrontation with Hart.

 In the first instance, in view of the fact that Hart testified as a defense witness, appellant was not denied his right to confront Hart. In the second instance, appellant raised only a general objection. The failure to specify the grounds for the objection amounts to a waiver on appeal. *May v. State*, 4 Tenn.Cr.App. 555, 474 S.W.2d 172 (1971). In the final instance, and most importantly, appellant failed to preserve this issue in his motion for a new trial. T.R.A.P. 3(e). The issue overruled, the judgment of the trial court is affirmed.

WALKER, P.J., and O'BRIEN, J., concur.