IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2020

### STATE OF TENNESSEE v. JAY HATHAWAY

**Appeal from the Circuit Court for Williamson County**
No. II-CR037896          Deanna B. Johnson, Judge

_____

### No. M2019-00540-CCA-R3-CO
_____

The Defendant, Jay Hathaway, appeals the probation revocation order from a February 25, 2019 probation violation hearing. The trial court determined that the Defendant had violated the terms of his probation sentence, applied eighty-five days of time served toward the revocation sentence, and ordered an additional sixty days to serve in jail before the Defendant would be reinstated to a sentence of eleven months and twenty-nine days. On appeal, the Defendant asserts that he was denied due process because he was not provided an expert on the issue of drug patch testing. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT L. HOLLOWAY, JR., JJ., joined.

Everette E. Parrish, Brentwood, Tennessee, for the appellant, Jay Hathaway.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's probation sentences, imposed following his guilty plea to three misdemeanor offenses. We provide a history of the Defendant's case as background to his appeal of the trial court's February 25, 2019 revocation of his probation sentences.

On February 2, 2015, the Defendant pleaded guilty to three counts of casual exchange of synthetic drugs, Class A misdemeanors. The trial court imposed consecutive sentences of eleven months and twenty-nine days to be served on supervised probation. On February 9, 2017, the Defendant's probation officer filed an affidavit of complaint for violation of probation, alleging that the Defendant had been arrested on February 6, 2017, for "Leaving the Scene of an Accident and Failure to Give Notice." An amended complaint added that the Defendant had tested positive for cocaine use. The Defendant admitted the violation and by agreement with the State, the trial court revoked the Defendant's probation, reinstated the sentence and extended the sentence for eleven months and twenty-nine days after service of thirty days in jail.

On October 19, 2017, the Defendant's probation officer filed a second probation violation complaint, alleging that the Defendant had tested positive for cocaine on October 11, 2017. The Defendant was arrested and, as a condition of his release on bond, the trial court required the Defendant to wear a drug patch. At the subsequent probation revocation hearing, the trial court revoked the Defendant's probation sentence, reinstated the sentence, and extended the sentence for eleven months and twenty-nine days. As a requirement of reinstatement to probation, the Defendant was required to wear the drug patch for six months and "follow all recommendations of the Samaritan Recovery Community."

On April 9, 2018, the Defendant's probation officer filed a third probation violation complaint, alleging that the Defendant had failed to abstain from illegal drug use based upon results from the drug patch, indicating the Defendant "was confirmed positive for amphetamines." Subsequently, the trial court granted the probation officer's request for dismissal of the complaint based upon a negative result from a "hair test."

On September 4, 2018, the Defendant's probation officer filed a fourth probation violation complaint, alleging that an August 10, 2018 testing of the drug patch worn by the Defendant from July 27, 2018, through August 10, 2018, had indicated positive for cocaine. On October 15, 2018, the complaint was amended to include a subsequent drug patch test on September 21, 2018, that also "confirmed positive for cocaine." The Defendant wore this drug patch from September 6, 2018, through September 21, 2018. On October 29, 2018, the Defendant's probation officer amended the complaint again, alleging that the October 5, 2018 testing of the drug patch worn by the Defendant from September 21, 2018 to the test date was "confirmed positive for cocaine." The Defendant's probation officer filed a third amendment to the complaint on November 8, 2018, alleging that an October 19, 2018 test "confirmed positive for cocaine."

The trial court held a hearing on the probation violation complaint on February 29, 2019. At this hearing, Malachias Gaskins, the Program Manager at Tennessee Recovery

Monitoring, testified to the chain of custody, installation, removal and quality control of the drug patches. He explained that drug patches are applied and removed in two-week periods to prevent damage to the patch and allow for accuracy with testing. He confirmed that the Defendant, in addition to the test results that were the basis of the probation violation complaint, had test results from the drug patch that indicated no drug use. He stated that the subsequent drug patches worn by the Defendant had not indicated drug use since the October 19, 2018 test.

The parties stipulated that Scott Cranmore, Vice President of Tennessee Recovery and Monitoring, was an expert in the area of data interpretation for transdermal patch and electronic monitoring devices. Mr. Cranmore testified about the science behind drug patch data. He explained that sweat was absorbed into the cellulose pad that is attached to a participant's body. The "sweat data" is collected and measured in nanogram weight, "much like urine testing, [or] hair follicle testing." Mr. Cranmore stated that it was "very doubtful" that testing would show a "positive" based upon contamination to the pad because the cellulose pad, which is adhered to the person, would have to be exposed to the contaminated area. Mr. Cranmore reviewed the October 19, 2018 test and noted that the nanogram value of 53 was certified by the lab as "present and positive" for cocaine. The chain of custody form indicated that the patch was intact upon removal thus contamination "could [not] have occurred." Mr. Cranmore reviewed the documentation for the other violations and confirmed that there was no indication of tampering or contamination.

The Defendant testified that his attorney told him that the Administrative Office of the Courts would not pay for an expert witness for a misdemeanor and that he could not afford to hire an expert witness to analyze the drug testing patch results in this case. He confirmed that he felt it was an "injustice" not to have his own expert and that he wanted the trial court to find that he had not violated his probation. On cross-examination, the State reviewed, and the Defendant agreed with, the summary of the history of this case including all of the prior probation revocations.

After hearing the evidence, the trial court noted that the Defendant disputed the accuracy of the drug patch test but found that the Defendant had violated the terms of his probation sentence. The trial court then allowed the Defendant to make an allocution statement. The Defendant acknowledged his past "mistakes" and discussed his drug treatment. The Defendant stated that "the sweat patch is generally reliable" but noted that "potential error results clearly exist."

The trial court ordered the Defendant to serve 123 days and then complete eleven months and twenty-nine days through supervised probation. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that his "Lack Of Access To His Own Drug Patch Expert was Fundamentally Unfair, Leaving Him Without A Basic Tool Of An Adequate Defense In Violation Of His Constitutional Right To Due Process." He argues that the State should be required to provide indigent parties with "a rebuttal expert." The State responds that the Defendant has waived our consideration of this issue because he did not raise it with the trial court.

Ordinarily, issues raised for the first time on appeal are waived. It has long been established that an appellate court will not consider an issue raised for the first time in the appellate court. *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996); *See* Tenn. R. App. P. 36(a). Nor may a defendant litigate an issue in the trial court on one ground, abandon the ground, and assert a new basis or ground for his contention in this court. *State v. Matthews*, 805 S.W.2d 776, 781 (Tenn. Crim. App. 1990); *State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988); *State v. Brock*, 678 S.W.2d 486, 489-90 (Tenn. Crim. App. 1984).

In the present case, the Defendant's attorney stated the following during closing argument at the probation revocation hearing:

> Because I'm appointed, I don't have the benefit of an expert to counter any other indication except the opinions of the State's expert. And I would like to present to the Court, that I don't have a full opportunity to defend the case given the conviction of my client and he is sincere in the belief [that the tests are wrong]. And I just wanted to put that to the Court to consider in perhaps there is enough wiggle room there that it could be - - that he could be found not in violation of his probation.

In our view, this is an argument for leniency because the Defendant's attorney did not have access to an expert witness of the Defendant's choosing. This does not, however, amount to an argument that the Defendant is entitled to an expert witness because the State is constitutionally required to provide an expert witness in cases involving misdemeanors. As such, we conclude that the Defendant has failed to properly preserve this issue for appellate review. Although this Court may, in certain circumstances, address as plain error an issue that would otherwise be waived, we conclude that the application of the plain error doctrine is not appropriate in this case. Tenn. R. App. P. 13(b); *State v. Adkisson*, 899 S.W.2d 626, 638-39 (Tenn. Crim. App. 1994).

Accordingly, because the Defendant failed to raise his issue before the trial court, he has waived our review and is not entitled to relief.

## III. Conclusion

Accordingly, based on the above mentioned reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE